# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| LIBERATED BRANDS LLC, *et al.* | § § | Case No. 25-10168 (JKS) |
| Debtors | § § § | |

## STATEMENT OF FINANCIAL AFFAIRS FOR
## Volcom Retail Outlets, LLC
### CASE NO. 25-10175 (JKS)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIBERATED BRANDS LLC, *et al.*,[1] | ) | Case No. 25-10168 (JKS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## GLOBAL NOTES AND
## STATEMENT OF LIMITATIONS, METHODOLOGY,
## AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES
## OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

### General

Liberated Brands LLC ("Liberated") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), are filing their respective *Schedules of Assets and Liabilities* (each, a "Schedule" and, collectively, the "Schedules") and *Statements of Financial Affairs* (each, a "Statement" or "SOFA" and, collectively, the "Statements" or "SOFAs") with the United States Bankruptcy Court for District of Delaware (the "Bankruptcy Court") pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 1007-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

These global notes and statements of limitations, methodology, and disclaimers regarding the Debtors' Schedules and Statements (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements, and should be referred to, and referenced in connection with, any review of the Schedules and Statements.[2]

The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on a stand-alone, unconsolidated basis. These Schedules and Statements neither purport to represent financial statements prepared in accordance

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Liberated Brands LLC (2718); Boardriders Retail, LLC (0505); Liberated AX LLC (1537); Liberated Brands International, Inc. (4439); Liberated Brands USA LLC (3827); Liberated-Spyder LLC (9831); Volcom Retail Outlets, LLC (1493); Volcom Retail, LLC (9045); and Volcom, LLC (6919). The location of the Debtors' service address for purposes of these chapter 11 cases is: 1740 Monrovia Ave, Costa Mesa, CA 92627.

[2] These Global Notes supplement, and are in addition to, any specific notes contained in each Debtor's Schedules or Statements. The fact that the Debtors prepared a Global Note with respect to any individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate.

with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled with the financial statements of each Debtor.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. Accordingly, the Debtors and their directors, managers, officers, agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein or the Schedules and Statements. In no event shall the Debtors or their directors, managers, officers, agents, attorneys, and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not, and however caused, even if the Debtors or their directors, managers, officers, agents, attorneys, and financial advisors are advised of the possibility of such damages.

The Schedules and Statements have been signed by Todd Hymel, Chief Executive Officer of the Debtors, and an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Hymel has relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' advisors and other professionals. Given the scale of the Debtors' businesses, Mr. Hymel has not (and practically could not have) personally verified the accuracy of each statement and representation in the Schedules and Statements, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

Subsequent receipt of information or an audit may result in material changes in financial data requiring amendment of the Schedules and Statements. Accordingly, the Schedules and Statements remain subject to further review and verification by the Debtors. The Debtors reserve their right to amend the Schedules and Statements from time-to-time as may be necessary or appropriate; *provided* that the Debtors, their agents, and their advisors expressly do not undertake any obligation to update, modify, revise, or recategorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or recategorized, except as required by applicable law.

Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.

The Schedules, Statements, and Global Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors.

**Global Notes and Overview of Methodology**

1. **Description of the Cases**.    The Debtors commenced these voluntary cases under chapter 11 of the Bankruptcy Code on February 2, 2025 (the "Petition Date").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.    On February 4, 2025, the Court entered an order authorizing the joint administration of the cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 68].  On February 18, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "Committee") [Docket No. 124].  Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements.  No trustee or examiner has been appointed in these chapter 11 cases.

2. **Global Notes Control**.  Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.  In the event that the Schedules or Statements differ from any of the Global Notes, the Global Notes shall control.

3. **Reservation of Rights**.  Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist.  The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate, but do not undertake any obligation to do so, except as required by applicable law.  Nothing contained in the Schedules, Statements, or Global Notes shall constitute a waiver of rights with respect to these chapter 11 cases, including, but not limited to, any rights or claims of the Debtors against any third party, or issues involving substantive consolidation, defenses, statutory or equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code, or any other relevant bankruptcy or non-bankruptcy laws to recover assets or avoid transfers.  Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

   a. **No Admission**.  Nothing contained in the Schedules and Statements or the Global Notes is intended as, or should be construed as, an admission or stipulation of the validity of any claim against any Debtors, any assertion made therein or herein, or a waiver of any of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

   b. **Claims Listing and Descriptions**.  The listing of a claim does not constitute an admission of liability by any of the Debtors, and the Debtors reserve the right to amend the Schedules and Statements accordingly, including with respect to claim description and designation.  Any failure to designate a claim listed on the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated."  The Debtors reserve all rights to dispute and to

3

assert setoff rights, offsets, counterclaims, and defenses to any claim reflected on their respective Schedules and Statements on any grounds, including, but not limited to, amount, liability, priority, status, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

c.      **Recharacterization**.   The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.   Nevertheless, due to the complexity of the Debtors' businesses, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items.   Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired on a postpetition basis.

d.      **Classifications**.  Listing (i) a claim on Schedule D as "secured," (ii) a claim on Schedule E/F as "priority" or "unsecured priority," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract.

e.      **Estimates and Assumptions**.   To prepare these Schedules and Statements and report information on a legal entity basis, the Debtors were required to make certain reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities, and the reported amounts of revenues and expenses during the applicable reporting periods. Actual results could differ from such estimates.   The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

f.      **Causes of Action**.   Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.   The Debtors reserve all rights with respect to any claim, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, lien, indemnity, guaranty, interest, damage, remedy, cause of action, proceeding, agreement, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, in tort, at Law, in equity, or otherwise.  Causes of action also include:  (i) all rights of setoff, counterclaim, or recoupment, and claims under contracts or for breaches of duties imposed by law

or in equity; (ii) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including, without limitation, securities laws, negligence, and gross negligence; (iii) the right to object to or otherwise contest claims or interests; (iv) claims pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (v) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (vi) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including, without limitation, fraudulent transfer laws, and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, causes of action, or avoidance actions, or in any way prejudice or impair the assertion of such claims or causes of action.

g.   **Intellectual Property Rights**.   Exclusion of any intellectual property on the Schedules and Statements shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.   Conversely, inclusion of any intellectual property on the Schedules and Statements shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned, or otherwise transferred pursuant to a sale, acquisition, or other transaction.   The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner or interest holder, however, in some instances, intellectual property owned or licensed by one Debtor may, in fact, be owned or licensed by another.   Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

h.   **Insiders**.   In the circumstances where the Schedules and Statements require information regarding "insiders," the Debtors have included information with respect to the individuals whom the Debtors believe may be included in the definition of "insider" set forth in section 101(31) of the Bankruptcy Code during the relevant time periods.   Such individuals may no longer serve in such capacities.

The listing or omission of a party as an "insider" for the purposes of the Schedules and Statements is for informational purposes and is not intended to be nor should be construed as an admission that those parties are insiders for purposes of section 101(31) of the Bankruptcy Code.   Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for: (a) the purposes of determining (i) control of the Debtors, (ii) the extent to which any individual or entity exercised management responsibilities or functions, (iii) corporate decision-making authority over the Debtors, or (iv) whether such individual or entity (or the Debtors) could successfully argue that they are not an insider under applicable law, including, without limitation, the Bankruptcy Code and federal securities laws, or with respect to any theories of liability; or (b) any other purpose.   Furthermore, certain of the individuals or entities identified as

insiders may not have been insiders for the entirety of the twelve-month period before the Petition Date, but the Debtors have included them herein out of an abundance of caution. The Debtors reserve all rights with respect thereto.

i.  **AI**. In certain situations, the Debtors and/or the Debtors' advisors may have used artificial intelligence and/or machine learning technology ("AI") to prepare the information included in the Schedules and Statements. AI has many benefits, including the ability to review large amounts of data in a relatively short period of time, and generate complex output based upon such data. However, AI technology has inherent limitations and can produce inaccurate results. In all cases where AI was utilized, the Debtors and/or the Debtors' advisors used reasonable efforts to ensure human review of the final content. However, inaccuracies may occur and consequently no assurances can be made regarding the information derived based upon AI technology that was included in the Schedules and Statements.

4.  <u>**Methodology**</u>.

a.  **Basis of Presentation**. For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include information for the Debtors and their non-Debtor affiliates. The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on an unconsolidated basis. Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that may be substantially different from financial information that would be prepared on a consolidated basis under GAAP. Therefore, these Schedules and Statements neither purport to represent financial statements prepared in accordance with GAAP, nor are they intended to fully reconcile to the financial statements prepared by the Debtors. Unlike the consolidated financial statements, these Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor. Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.

The Debtors attempted to attribute the assets and liabilities, certain required financial information, and various cash disbursements to the proper Debtor entity. However, because the Debtors' accounting systems, policies, and practices were developed for consolidated reporting purposes rather than for reporting by legal entity, it is possible that not all assets, liabilities, or amounts of cash disbursements have been recorded with the correct legal entity on the Schedules and Statements. Accordingly, the Debtors reserve all rights to supplement and/or amend the Schedules and Statements in this regard.

Given, among other things, the uncertainty surrounding the collection, ownership, and valuation of certain assets and the amount and nature of certain liabilities, a Debtor may report more assets than liabilities. Such report shall not constitute an admission that such Debtor was solvent on the Petition Date or at any time prior to or after the Petition Date. Likewise, a Debtor reporting more liabilities than assets

6

shall not constitute an admission that such Debtor was insolvent on the Petition Date or at any time prior to or after the Petition Date. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value. The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

b.   **Reporting Date**. To the best of the Debtors' knowledge and except as otherwise noted herein, the asset information provided herein represents the Debtors' asset data as of December 31, 2024, the date of the Debtors' month-end closure to their balance sheet prior to Petition Date, and the Debtors' liability data herein represents the liability data of the Debtors as of the Petition Date, adjusted with liability data as of March 3, 2025, for authorized payments under the First Day Orders (as defined herein), unless otherwise specified.

c.   **Confidentiality or Sensitive Information**. There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential or commercially sensitive nature of certain information (*e.g.*, names and other information), or concerns for the privacy of the Debtors' creditors and clients. The alterations will be limited to only what is necessary to protect the Debtor or the applicable third party. The Debtors may also be authorized or required to redact certain information from the public record pursuant to orders of the Court authorizing the Debtors to redact, seal, or otherwise protect such information from public disclosure.[3]

d.   **Intercompany Claims**. Receivables and payables among and between the Debtors and (i) other Debtors or (ii) their non-Debtor affiliates are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' unaudited books and records. As described more fully in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate the Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, (D) Continue to Perform Intercompany Transactions, and (II) Granting Related Relief* [Docket No. 11] (the "Cash Management Motion"), the Debtors utilize an integrated, centralized cash management system in the ordinary course of business to collect, concentrate, and disburse funds generated from their operations (the "Cash Management System"). The Debtors maintain a consolidated accounts payable and disbursements system to pay operating and administrative expenses through various disbursement accounts. The Cash Management System is supported by approximately twenty-eight bank accounts, all of which are owned and controlled by the Debtors.

---

[3] Such as the *Interim Order (I) Authorizing the Debtors to (A) Redact Certain Confidential Information of Customers and (B) Redact Certain Personally Identifiable Information of Individuals, (II) Approving the Form and Manner of Service of the Notice of Commencement, and (III) Granting Related Relief* [Docket No. 90] (the "Interim Creditor Matrix Order").

Prior to the Petition Date, the Debtors and certain non-Debtor affiliates engaged in intercompany transactions (the "Intercompany Transactions") in the ordinary course of business, which resulted in intercompany receivables and payables (the "Intercompany Claims"). The Debtors maintain records of the Intercompany Claims and Intercompany Transactions. Pursuant to the *Final Order (I) Authorizing the Debtors to (A) Continue to Operate the Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, (D) Continue to Perform Intercompany Transactions, and (II) Granting Related Relief* [Docket No. 197] (the "Final Cash Management Order"), the Court granted the Debtors authority to continue to engage in Intercompany Transactions in the ordinary course of business, subject to certain limitations set forth therein. The intercompany balances set forth in Schedule A/B and Schedule E/F are as of December 31, 2024, and may not accurately reflect current positions as Debtors continue to engage in and reconcile Intercompany Transactions.

The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission or conclusion regarding the allowance, classification, validity, or priority of such account or characterization of such balances as debt, equity, or otherwise. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses in connection with any and all intercompany receivables and payables, including, but not limited to, with respect to the characterization of intercompany claims, loans, and notes. Without limiting the generality of the foregoing, certain intercompany receivables and payables among and between the Debtors have been consolidated and netted per the Debtors' books and records. Such treatment is not, and should not be construed as, an admission of the amount and/or validity of any such intercompany receivables and payables or the validity of any netting or offset per the Debtors' books and records. The Debtors take no position in these Schedules and Statements as to whether any such amounts would be allowed as a Claim, an Interest, or not all allowed at all.

In addition, certain of the Debtors act on behalf of other Debtors. Reasonable efforts have been made to indicate the ultimate beneficiary of a payment or obligation. Whether a particular payment or obligation was incurred by the entity actually making the payment or incurring the obligation is a complex question of applicable non-bankruptcy law, and nothing herein constitutes an admission that any Debtor entity or non-Debtor affiliate is an obligor with respect to any such payment. The Debtors reserve all rights to reclassify any payment or obligation as attributable to another entity and all rights with respect to the proper accounting and treatment of such payments and liabilities.

e.    **Guarantees and Other Secondary Liability Claims.** The Debtors have exercised reasonable efforts to locate and identify guarantees in their executory contracts, unexpired leases, secured financings, and other such agreements. Where guarantees have been identified, they have been included in Schedule D, E/F, or H, as applicable, for the affected Debtor(s). The Debtors may have inadvertently omitted guarantees embedded in their contractual agreements and may identify

additional guarantees as they continue to review their books and records and contractual agreements.  The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional guarantees are identified.

f.   **Excluded Assets and Liabilities.**  The Debtors may have excluded certain categories of assets and liabilities from the Schedules and Statements, including: certain deferred charges, accounts, or reserves recorded only for purposes of complying with the requirements of GAAP; deferred tax assets and liabilities; goodwill and other intangibles; deferred revenue accounts; and certain accrued liabilities including accrued salaries and employee benefits.  Other immaterial assets and liabilities may also have been excluded.

g.   **Duplication**.  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Schedules and Statements.  To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

h.   **Net Book Value of Assets**.  In many instances, current market valuations are not maintained by, nor readily available to, the Debtors.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to obtain current market valuations for all assets.  As such, unless otherwise indicated, net book values as of December 31, 2024, are presented for all assets, unless otherwise indicated.  Market values may vary, sometimes materially, from net book values.  When necessary, the Debtors have indicated that the value of certain assets is "Unknown" or "Undetermined."  The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.  Amounts ultimately realized may vary materially from net book value (or other value so ascribed).  Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset values set forth in the Schedules and Statements.  Assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.  The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset.  Nothing in the Debtors' Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date or any time prior to the Petition Date.

i.   **Currency**.  All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated.

j.   **Payment of Prepetition Claims Pursuant to First Day Orders**.  Following the Petition Date, the Court entered various orders authorizing (but not directing) the Debtors to, among other things, pay certain prepetition:  (i) service fees and charges assessed by the Debtors' banks; (ii) insurance obligations; (iii) employee wages, salaries, and related items (including, but not limited to, employee benefit programs

and supplemental workforce obligations); (iv) taxes and assessments; and (v) critical vendor obligations (collectively, the "First Day Orders"). As such, outstanding liabilities may have been reduced by any Court-approved, postpetition payments made on prepetition payables. Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated. The Debtors reserve the right to update the Schedules and Statements to reflect payments made pursuant to an order of the Court (including the First Day Orders).

k. **Other Paid Claims**. To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Court approval. To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary or appropriate to avoid overpayment or duplicate payment for such liabilities.

l. **Setoffs**. The Debtors routinely incur setoffs, net payments, and other similar rights in the ordinary course of business. Such setoffs and nettings arise from various transactions or items including, but not limited to, intercompany transactions, counterparty settlements, pricing discrepancies, rebates, returns, warranties, refunds, and negotiations and/or other disputes or agreements between the Debtors and their customers or vendors. In accordance with Debtors' agreements with their vendors and other contract counterparties, these amounts are set off on a reoccurring basis against future revenues in a normal course reconciliation process with these partners. These normal, ordinary course setoffs and nettings are common in the wholesale industry. Due to the voluminous nature of setoffs and nettings, it would be unduly burdensome and costly for the Debtors to list each such transaction. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, certain of these ordinary course setoffs are not independently accounted for and, as such, may be excluded from the Schedules and Statements. In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not yet aware. Any setoff of a prepetition debt to be applied against the Debtors is subject to the automatic stay and must comply with section 553 of the Bankruptcy Code. The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted against them, including, but not limited to, any and all rights preserved pursuant to section 558 of the Bankruptcy Code.

m. **Property and Equipment.** Unless otherwise indicated, owned property and equipment are valued at net book value.

n. **Leases**. The Debtors have not included future obligations under any capital or operating leases in the Schedules and Statements. To the extent there was an

amount outstanding on account of such lease as of the Petition Date, the creditor has been included on Schedule E/F of the Schedules.  In the ordinary course of business, certain of the Debtors may enter into agreements titled as leases for property, other property interests, and/or equipment from third party lessors for use in the daily operation of their business.  Any such prepetition obligations that are known to the Debtors have been listed on Schedule E/F, and the underlying lease agreements are listed on Schedule G.  Nothing in the Schedules and Statements is, or shall be construed to be, an admission as to the determination of the legal status of any lease (including whether any lease is a true lease, a financing arrangement, or a real property interest), and the Debtors reserve all rights with respect to such issues.

o.   **Liens**.  The inventories, property, and equipment listed in the Schedules and Statements are presented without consideration of any asserted mechanics', materialmen, or similar liens that may attach (or have attached) to such inventories, property, and equipment, and the Debtors reserve all of their rights with respect to such liens (if any).  Uniform Commercial Code ("UCC") liens as of the Petition Date, if any, are listed on Schedule D.  Certain UCC liens that the Debtors believe are no longer valid may also attach to such inventories, property, and equipment.

p.   **Insurance**.  The Debtors have not set forth insurance policies as assets or executory contracts in the Schedules and Statements.  Information regarding the Debtors' insurance policies is set forth in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance, Surety Coverage, and Letters of Credit Entered Into Prepetition and Satisfy Prepetition Obligations Related Thereto, (B) Renew, Amend, Supplement, Extend, or Purchase Insurance Policies, Surety Bonds, and Letter of Credit, and (C) Continue to Pay Broker Fees, and (II) Granting Related Relief* [Docket No. 8] (the "Insurance Motion").

q.   **Allocation of Liabilities**.  The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtors reserve all rights to amend, supplement, or otherwise modify the Schedules and Statements as they deem appropriate in this regard.

The liabilities listed on the Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code.  Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any such transaction or any document or instrument related to any creditor's claim.

r.   **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements.  To the extent

there are items listed with unknown or undetermined amounts, the actual totals may be materially different from the listed totals. The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount. To the extent a Debtor is a guarantor of debt held by another Debtor or non-Debtor affiliate, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

s.      **Unliquidated Claim Amounts**.  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

t.      **Credits and Adjustments**.  The claims of individual creditors for, among other things, goods, products, services, and taxes are listed as the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, rebates, trade debits, or other adjustments that are actually owed by a creditor to the Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and vendor payments, if applicable. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including but not limited to, the right to assert claims objections and/or setoffs with respect to the same, or apply such allowances or adjustments in the ordinary course of business on a postpetition basis.

u.      **Claims of Third-Party Related Entities**.  While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations thereto. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

v.      **Individual Addresses**.  Personal addresses of individuals including current and former employees and directors have been removed from entries listed throughout the Schedules and Statements, where applicable, pursuant to the Interim Creditor Matrix Order.

## Specific Schedules Disclosures.

## Part 1 -  Cash and Cash Equivalents

a.      **Schedule A/B-2 – Cash and Cash Equivalents; Deposits and Prepayments**. Details with respect to the Cash Management System and bank accounts are provided in the Cash Management Motion and Final Cash Management Order. A full schedule of the Debtors' bank accounts is included in the Cash Management Motion. Additionally, the Bankruptcy Court, pursuant to the *Final Order (I) Approving the Debtors Proposed Adequate Assurance of Payment for Future*

*Utility Services, (II) Approving the Debtors Proposed Procedures for Resolving Additional Assurance Requests, (III) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, and (IV) Granting Related Relief* [Docket No. 191] (the "Final Utility Order"), authorized the Debtors to deposit an adequate assurance payment for future utility services. As this deposit did not exist on the Petition Date, Debtors have excluded this account and the corresponding balance funded in accordance with the Final Utility Order from Schedule A/B, Part 2.

The Debtors' cash balances are listed as of the close of business on January 31, 2025.

b.    **Schedule A/B, Part 4 – Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an LLC, Partnership, or Joint Venture.** Ownership interests in subsidiaries and partnerships have been listed in Schedule A/B, Part 4. The Debtors make no representation as to the value of their ownership of each subsidiary as the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value. The Debtors do not have any ownership interests in any joint ventures.

c.    **Schedule A/B, Part 7 – Office Furniture, Fixtures, and Equipment; and Collectibles.** Dollar amounts are presented net of accumulated depreciation and other adjustments.

d.    **Schedule A/B, Part 11 – All Other Assets.** Dollar amounts are presented net of depreciation, amortization, impairments, and other adjustments, as applicable. Additionally, the Debtors may receive refunds for sales and use tax and/or other taxes at various times throughout their fiscal year. As of the Petition Date, however, certain of these amounts are unknown to the Debtors and, accordingly, may not be listed on Schedule A/B. Intercompany receivables due from debtor entities also have been listed in Schedule A/B, Part 11.

*Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, including Counterclaims of the Debtor and Rights to Setoff Claims.* In the ordinary course of business, the Debtors may have accrued, or may subsequently accrue, certain rights to counterclaims, cross-claims, setoffs, refunds with their customers and suppliers, or potential warranty claims against their suppliers. Additionally, certain of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, claims as a plaintiff or counterclaims and/or cross-claims as a defendant. Because certain of these claims are unknown to the Debtors and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

*Executory Contracts and Unexpired Leases.* Because of the large number of the Debtors' executory contracts and unexpired leases, as well as the size and scope of

13

such documents, the Debtors have not listed such agreements on Schedule A/B as assets.  Instead, the Debtors have only listed such agreements on Schedule G.

e.    **Schedule D – Creditors Who Have Claims Secured by Property.**  Except as otherwise agreed pursuant to a stipulation or order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D.  Moreover, although the Debtors have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim, subject to the Interim DIP Orders.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable agreements and other related relevant documents is necessary for a complete description of the collateral and to determine the nature, extent, and priority of any liens.  In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.

The Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights.

f.    **Schedule E/F – Creditors Who Have Unsecured Claims.**

*Part 1 – Creditors with Priority Unsecured Claims.*  Pursuant to the *Final Order (I) Authorizing the Payment of Certain Prepetition and Postpetition Taxes and Fees and (II) Granting Related Relief* [Docket No. 193] (the "Final Taxes Order"), the Debtors have been granted the authority to pay, in their discretion, certain tax liabilities that accrued prepetition.  Accordingly, any unsecured priority claims based upon prepetition tax accruals that have been paid pursuant to the Final Taxes Order are not listed in Schedule E.  The Debtors believe that any non-disputed tax claims for prepetition amounts, whether allowable as a priority or nonpriority claim have been or will be satisfied.

Furthermore, pursuant to the *Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs; and (II) Granting Related Relief* [Docket No. 82] (the "First Interim Wages Order") and the *Second Interim Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs; and (II) Granting Related Relief* [Docket No. 220] (the "Second Interim Wages Order" and, together with the First Interim Wages Order, the "Interim Wages Orders"), the Debtors received authority to pay certain prepetition obligations, including to pay employee wages and other employee benefits, in the

ordinary course of business; *provided* that until entry of a final order granting such relief is obtained, the Debtors have not and will not make any payments under the Non-Insider Retention Bonus Program (as defined in the Wages Orders) to any employee who is owed in excess of $10,000 under the Non-Insider Retention Bonus Program. The Debtors believe that there are no prepetition amounts owed to any employee in excess of $10,000 under the Non-Insider Retention Bonus Program. The Debtors believe that any non-disputed, non-insider employee claims for prepetition amounts related to ongoing payroll and benefits, whether allowable as a priority or nonpriority claim, have been or will be satisfied. Accordingly, such amounts are not listed.

The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

***Part 2 – Creditors with Nonpriority Unsecured Claims.*** The liabilities identified in Schedule E/F, Part 2, are derived from the Debtors' books and records. The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

The Debtors generally allocate individual liabilities to particular Debtors. However, in certain cases, it would be a time-consuming and inefficient use of estate resources, or impracticable, to assign a given liability to a particular Debtor based on a contractual obligation. Instead, the Schedules reflect the liability based on the Debtors' books and records.

Schedule E/F, Part 2 (Statements Part 3, Question 7), contains information regarding pending litigation and/or formal demands involving the Debtors. The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements. For the avoidance of doubt, demand letters received from potential litigants as a result of alleged injuries sustained at one of the Debtors' stores that do not list a specific Debtor are listed on Debtor Liberated Brands LLC Schedules, as applicable. In addition, the Debtors' insurance may cover personal injury claims in part or in full.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts or unexpired leases, if any, that may be or have been rejected in these chapter 11 cases.

In many cases, the claims listed on Schedule E/F, Part 2, arose, accrued, or were incurred on various dates or on a date or dates that are unknown to the Debtors or are subject to dispute. Where the determination of the date on which a claim arose, accrued, or was incurred would be unduly burdensome and costly to the Debtors' estates, the Debtors have not listed a specific date or dates for such claim.

As of the time of filing of the Schedules and Statements, the Debtors had not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtors reserve their rights to, but undertake no obligation to, amend Schedules D and E/F if and as they receive such invoices.

With respect to gift cards, the Debtors cannot ascertain the identity of the vast majority of the holders of such gift cards or whether such gift cards are still in existence. Therefore, the Debtors have not included any holders of gift cards on the Schedules.

Liabilities listed on Schedules E/F reflect the Debtors' book and records balances of prepetition liabilities as of the Petition Date and are inclusive of certain prepetition balances that were paid after the Petition Date pursuant various First Day Orders. The Debtors expect that certain suppliers may continue to receive payments on account of prepetition amounts through the pendency of these cases. Consequently, any such supplier amounts as of March 3, 2025, have been marked as contingent and unliquidated on Schedule E/F.

g.   **Schedule G – Executory Contracts and Unexpired Leases.** While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, and unintended duplication of items may have occurred.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as supplemental agreements and letter agreements, which documents may not be set forth in Schedule G.

The Debtors reserve all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same supplier or provider may appear multiple times in Schedule G. Multiple listings, if any, may reflect distinct agreements between the applicable Debtor and such supplier or provider.

The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract. The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

In some cases, contract counterparties from dormant legacy businesses and historical acquisitions may not have been updated to reflect assignment to active Debtor entities although the Debtors have assumed and continue to perform under the terms of such agreements. In such cases, Debtors have included such items on Schedule G of Liberated Brands USA LLC.

Certain Debtors are guarantors and parties to guaranty agreements regarding the Debtors' prepetition credit facility. The guaranty obligations arising under these agreements are reflected on Schedules D only.

h.    **Schedule H – Co-Debtors.**  In the ordinary course of their business, the Debtors pay certain expenses on behalf of their subsidiaries. For purposes of Schedule H, the Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Further, certain of the guarantees, if any, reflected on Schedule H may have expired or may no longer be enforceable. Thus, the Debtors reserve their rights to amend Schedule H to the extent that additional guarantees are identified, or such guarantees are discovered to have expired or become unenforceable.

In the ordinary course of business, the Debtors may become subject to pending or threatened litigation and claims arising out of the conduct of their businesses. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counterclaims against other parties. The Debtors have not listed any litigation-related co-debtors on Schedule H. Instead, all such listings can be found on the Debtors' Schedule E/F.

**5.    Specific Statements Disclosures.**

a.    **Statements, Part 1, Question 1.**  Revenue is presented on a net basis.

b.    **Statements, Part 2, Questions 3 and 4.**  Prior to the Petition Date, the Debtors maintained the Cash Management System through which certain Debtors made

payments on behalf of certain Debtor affiliates and certain non-debtor affiliates, as further explained in the Cash Management Motion.  Consequently, all payments to creditors and insiders listed in response to Questions 3 and 4 on each of the Debtors' Statements reflect payments made by one of the Debtors or Debtor affiliates from operating bank accounts on behalf of the corresponding Debtor, pursuant to the Cash Management System described in the Cash Management Motion.

To the extent: (i) a person qualified as an "insider" in the year prior to the Petition Date, but later resigned their insider status or (ii) did not begin the year as an insider, but later became an insider, the Debtors have only listed those payments made while such person was defined as an insider in Statements, Part 2, Question 4.

c.   **Statements, Part 2, Question 6 – Setoffs.**  For a discussion of setoffs and nettings incurred by the Debtors, refer to paragraph 4(l) of these Global Notes.

d.   **Statements, Part 6, Question 11.**  All disbursements listed in Statement 11 were initiated and disbursed either by Volcom LLC and/or Liberated Brands USA LLC but were for the benefit of all Debtors.

e.   **Statements, Part 6, Question 13.**  With respect to Statement Question 13 for the SOFAs for Debtors Liberated Brands LLC and Liberated Brands International, Inc., certain transfers to ABG-Brighton LLC, QS Holdings S.à r.l, and Authentic Brands Group LLC represent the total consideration to fund the acquisition.  Such consideration included both cash and the incurrence of unsecured debt by the Debtors.  This unsecured debt is reflected on Schedules E/F for Liberated Brands LLC and Liberated Brands International, Inc.

f.   **Statements, Part 9, Question 17.**  With respect to the SOFAs for Debtors Volcom, LLC, Volcom Retail, LLC, and Volcom Retail Outlets, LLC the Debtors changed the name of the 401(k) plan from the Volcom, LLC 401(k) Plan to the Liberated Brands, LLC 401(k) Plan.

g.   **Statements, Part 11, Question 21 – Property Held for Another.**  The Debtors are obligated under various agreements and programs to remit certain funds held for third parties to such parties and have received authorization to do so under the *Final Order (I) Authorizing the Debtors to Pay Prepetition Claims of Critical Vendors and Lien Claimants and (II) Granting Related Relief* [Docket No. 189], the Interim Wages Orders, and the Final Taxes Order.  To the extent that any of the funds described above are held or paid for the benefit of third parties, such funds do not constitute property of the Debtors' estates, and the Debtors therefore have not included such amounts in their responses to Statement Question 21.

Statement Question 21 with respect to the SOFA for Debtor Volcom, LLC (line item 21.1) includes proceeds of certain assets transferred to Q4D LLC ("Q4D") in a prepetition transaction that have been collected by the Debtors since the Petition

Date.  Nothing in the Schedules and Statements determines or affects any entitlements of any person or entity in respect of such amounts.

As provided for in the Interim DIP Orders, as and when the Debtors identify proceeds of AR and Inventory (each as defined in the Q4D TAA) (as defined in the Interim DIP Orders), the Debtors shall within one business day thereafter notify the DIP Secured Parties and Q4D of the same, including the amount of such proceeds and backup documentation supporting the calculation of such amount, and the DIP Secured Parties shall within two business days thereafter fund an amount equal to the amount of such proceeds so identified by the Debtors into a segregated account with the DIP Agent (the "Specified Segregated Account"); *provided*, that the DIP Secured Parties shall not be required to fund any amount in excess of $4,000,000 into such Specified Segregated Account under the Interim Orders; *provided, further*, that if and when the amount funded or required to be funded into the Specified Segregated Account exceeds $3,000,000, absent agreement of the Debtors, the DIP Secured Parties and Q4D, the Debtors shall be required to return to the Court on an expedited basis to obtain further relief.  The rights, privileges, and defenses of all parties with respect to any legal entitlement to the funds in the Specified Segregated Account, including the amount required to be funded into such Specified Segregated Account, are fully reserved.  Absent agreement among the Debtors, the DIP Secured Parties, and Q4D, or further order of the Court, the funds in the Specified Segregated Account or any valid and senior legal entitlement of Q4D with respect to such AR and Inventory, regardless of whether in the Specified Segregated Account, (i) shall not be subject to the DIP Liens or Adequate Protection Liens; and (ii) shall not be transferred out of the Specified Segregated Account.

Nothing in the Schedules and Statements in any way prejudices or impairs any of Q4D's rights, privileges, claims, causes of action, remedies, defenses, or interests against the Debtors, the DIP Secured Parties, the Pre-Petition Secured Parties, or any other party, related to or arising under the Q4D Transaction, the Q4D Transactions Documents, the Consent, the AR and Inventory (and proceeds thereof, whether collected or received pre- or postpetition), or otherwise.

Nothing in the Schedules and Statements in any way prejudices or impairs any rights, privileges, claims, causes of action, remedies, defenses, or interests of the Debtors, the DIP Secured Parties, the Prepetition Secured Parties, or any other party in relation to the Q4D Transaction, the Q4D Transactions Documents, the Consent, the AR and Inventory (and proceeds thereof, whether collected or received pre- or postpetition) and Q4D's asserted entitlement thereto, or otherwise.

h.   **Statements, Part 7, Question 14 – Prior Locations.**  The address of each Debtor's main center of operations or headquarters as of the Petition Date was included in the Debtors' Voluntary Petitions.

i. **Statements, Part 13, Question 25.** Information listed in Question 25 is based on best historical corporate structure information available through December 2024. Certain dates of ownership may be approximate and certain historical address information may be unavailable for entities that no longer exist. In the case of non-U.S. entities, corporate registration numbers may be listed in place of U.S. tax ID numbers.

j. **Statements, Part 13, Question 26 – Books, Records, and Financial Statements.** The Debtors provide certain parties, such as banks, auditors, potential investors, vendors, and financial advisors, with financial statements that may not be part of a public filing. The Debtors do not maintain complete lists or other records tracking such disclosures. Therefore, the Debtors have not provided a list of these parties in their response to Statement Question 26.

k. **Statements, Part 13, Question 27 – Inventories.** Any inventory held by third-party logistics providers is subject to each third-party logistics provider's respective inventory control procedures. The Debtors receive confirmation on such third-party logistics provider related inventory in support of their financial statement audits.

| Fill in this information to identify the case and this filing: | |
|---|---|
| Debtor Name: | Volcom Retail Outlets, LLC |
| United States Bankruptcy Court: | The District of Delaware |
| Case Number (if known): | 25-10175 (JKS) |

Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

**Part 1:**     **Income**

1. **Gross Revenue from business**

☐ None.

| Identify the Beginning and Ending Dates of the Debtor's Fiscal Year, which may be a Calendar Year | | | Sources of Revenue (Check all that apply) | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|---|---|
| **From the beginning of the fiscal year to filing date:** | From 01/01/2025 to 01/31/2025 <br> MM/DD/YYYY   MM/DD/YYYY | | ☑ Operating a business <br> ☐ Other _____ | $1,364,236.83 |
| **For prior year** | From 01/01/2024 to 12/31/2024 <br> MM/DD/YYYY   MM/DD/YYYY | | ☑ Operating a business <br> ☐ Other _____ | $29,169,175.14 |
| **For the year before that** | From 01/01/2023 to 12/31/2023 <br> MM/DD/YYYY   MM/DD/YYYY | | ☑ Operating a business <br> ☐ Other _____ | $31,577,917.56 |

| Part 1: | Income |
|---------|--------|

2. **Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None.

| | Description of Sources of Revenue | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|
| | | |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

3.  **Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers — including expense reimbursements — to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None.

| Creditor's Name and Address | Dates | Total Amount or Value | Reasons for Payment or Transfer |
|---|---|---|---|
| 3.1  AMERICAN EXPRESS ATTN US PAYMENT FL 1801 NW 66TH AVE. PLANTATION, FL 33313 | 11/04/2024 | $29.63 | ☐ Secured debt |
| | 11/04/2024 | $7.95 | ☐ Unsecured loan repayments |
| | 11/04/2024 | $7.95 | ☐ Suppliers or vendors |
| | 11/05/2024 | $194.95 | ☑ Services |
| | 11/05/2024 | $164.47 | ☐ Other _____ |
| | 11/05/2024 | $126.56 | |
| | 11/05/2024 | $126.24 | |
| | 11/05/2024 | $121.07 | |
| | 11/05/2024 | $118.14 | |
| | 11/05/2024 | $115.39 | |
| | 11/05/2024 | $112.04 | |
| | 11/05/2024 | $102.04 | |
| | 11/05/2024 | $86.13 | |
| | 11/05/2024 | $81.75 | |
| | 11/05/2024 | $75.43 | |
| | 11/05/2024 | $66.95 | |
| | 11/05/2024 | $62.42 | |
| | 11/05/2024 | $61.96 | |
| | 11/05/2024 | $58.16 | |
| | 11/05/2024 | $54.10 | |
| | 11/05/2024 | $52.45 | |
| | 11/05/2024 | $47.67 | |
| | 11/05/2024 | $41.31 | |
| | 11/05/2024 | $39.28 | |
| | 11/05/2024 | $34.75 | |
| | 11/05/2024 | $31.63 | |
| | 11/05/2024 | $31.01 | |
| | 11/05/2024 | $30.07 | |
| | 11/05/2024 | $29.63 | |
| | 11/05/2024 | $21.65 | |
| | 11/05/2024 | $18.97 | |
| | 11/05/2024 | $16.67 | |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

| | |
|---|---|
| 11/05/2024 | $1.40 |
| 11/07/2024 | $20.95 |
| 11/15/2024 | $73.00 |
| 11/22/2024 | $56.57 |
| 12/03/2024 | $7.95 |
| 12/03/2024 | $7.95 |
| 12/05/2024 | $456.42 |
| 12/05/2024 | $358.14 |
| 12/05/2024 | $274.29 |
| 12/05/2024 | $257.43 |
| 12/05/2024 | $211.00 |
| 12/05/2024 | $203.76 |
| 12/05/2024 | $165.11 |
| 12/05/2024 | $157.19 |
| 12/05/2024 | $152.81 |
| 12/05/2024 | $151.68 |
| 12/05/2024 | $145.11 |
| 12/05/2024 | $126.02 |
| 12/05/2024 | $115.89 |
| 12/05/2024 | $105.10 |
| 12/05/2024 | $100.18 |
| 12/05/2024 | $94.45 |
| 12/05/2024 | $89.71 |
| 12/05/2024 | $75.58 |
| 12/05/2024 | $66.15 |
| 12/05/2024 | $64.93 |
| 12/05/2024 | $62.91 |
| 12/05/2024 | $58.22 |
| 12/05/2024 | $53.26 |
| 12/05/2024 | $45.16 |
| 12/05/2024 | $43.90 |
| 12/05/2024 | $33.40 |
| 12/05/2024 | $30.31 |
| 12/10/2024 | $90.23 |
| 12/10/2024 | $32.73 |
| 12/13/2024 | $29.43 |
| 12/16/2024 | $55.41 |
| 12/17/2024 | $63.36 |
| 12/23/2024 | $142.47 |
| 12/27/2024 | $73.42 |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

| | |
|---|---|
| 12/30/2024 | $39.29 |
| 12/30/2024 | $35.46 |
| 12/31/2024 | $32.63 |
| 01/02/2025 | $7.95 |
| 01/02/2025 | $7.95 |
| 01/03/2025 | $18.22 |
| 01/06/2025 | $394.31 |
| 01/06/2025 | $372.74 |
| 01/06/2025 | $318.91 |
| 01/06/2025 | $233.12 |
| 01/06/2025 | $190.84 |
| 01/06/2025 | $188.28 |
| 01/06/2025 | $180.87 |
| 01/06/2025 | $176.96 |
| 01/06/2025 | $155.76 |
| 01/06/2025 | $155.53 |
| 01/06/2025 | $137.71 |
| 01/06/2025 | $132.41 |
| 01/06/2025 | $118.42 |
| 01/06/2025 | $110.92 |
| 01/06/2025 | $106.49 |
| 01/06/2025 | $103.44 |
| 01/06/2025 | $90.34 |
| 01/06/2025 | $86.94 |
| 01/06/2025 | $86.64 |
| 01/06/2025 | $77.17 |
| 01/06/2025 | $76.47 |
| 01/06/2025 | $72.13 |
| 01/06/2025 | $66.92 |
| 01/06/2025 | $64.58 |
| 01/06/2025 | $57.38 |
| 01/06/2025 | $47.49 |
| 01/06/2025 | $45.18 |
| 01/06/2025 | $29.63 |
| 01/06/2025 | $23.70 |
| 01/08/2025 | $72.74 |
| 01/09/2025 | $2.05 |
| 01/10/2025 | $5.50 |
| 01/14/2025 | $228.87 |
| 01/14/2025 | $77.58 |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

|  | | | |
|---|---|---|---|
| | 01/14/2025 | $29.62 | |
| | 01/15/2025 | $123.49 | |
| | 01/15/2025 | $114.56 | |
| | 01/15/2025 | $15.43 | |
| | 01/16/2025 | $198.78 | |
| | 01/21/2025 | $4.80 | |
| | 01/21/2025 | $3.80 | |
| | 01/23/2025 | $5.68 | |
| | 01/24/2025 | $29.43 | |
| | 01/27/2025 | $225.87 | |
| **TOTAL AMERICAN EXPRESS** | | **$11,702.38** | |

3.2 AURUS INC.
1 EDGEWATER DR. SUITE 200
NORWOOD, MA 02062

| | 11/04/2024 | $4,493.88 |
| | 01/21/2025 | $4,572.72 |

☐ Secured debt
☐ Unsecured loan repayments
☑ Suppliers or vendors
☐ Services
☐ Other _____

**TOTAL AURUS INC.**  **$9,066.60**

3.3 BRINK'S INC.
7373 SOLUTIONS CENTER
CHICAGO, IL 60677-7003

| | 11/08/2024 | $4,218.22 |
| | 11/15/2024 | $4,787.53 |
| | 12/06/2024 | $869.90 |
| | 12/13/2024 | $4,692.63 |
| | 12/20/2024 | $5,457.90 |
| | 01/03/2025 | $3,354.85 |
| | 01/31/2025 | $4,404.47 |

☐ Secured debt
☐ Unsecured loan repayments
☑ Suppliers or vendors
☐ Services
☐ Other _____

**TOTAL BRINK'S INC.**  **$27,785.50**

3.4 CALIFORNIA DEPARTMENT OF TAX AND FEE
ADMINISTRATION
MAY LEE STATE OFFICE COMPLEX
651 BANNON ST
SUITE 100
SACRAMENTO, CA 95811-0299

| | 11/21/2024 | $55,582.00 |
| | 12/20/2024 | $102,060.00 |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers or vendors
☐ Services
☑ Other  Taxes

**TOTAL CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION**  **$157,642.00**

3.5 CAMARILLO PREMIUM OUTLETS
P.O. BOX 822896
PHILADELPHIA, PA 19182-2896

| | 11/14/2024 | $22,836.03 |
| | 11/27/2024 | $22,836.03 |
| | 12/11/2024 | $22,836.03 |
| | 12/24/2024 | $22,836.03 |
| | 01/14/2025 | $23,122.55 |

☐ Secured debt
☐ Unsecured loan repayments
☑ Suppliers or vendors
☐ Services
☐ Other _____

**TOTAL CAMARILLO PREMIUM OUTLETS**  **$114,466.67**

3.6 CARLSBAD PREMIUM OUTLETS, LLC
P.O. BOX 828913

| | 11/13/2024 | $20,250.53 |

☐ Secured debt
☐ Unsecured loan repayments

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

| | | | |
|---|---|---|---|
| PHILADELPHIA, PA 19182-8913 | 11/27/2024 | $20,250.53 | ☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | 12/10/2024 | $20,250.53 | |
| | 12/26/2024 | $20,250.53 | |
| | 01/14/2025 | $20,520.66 | |
| **TOTAL CARLSBAD PREMIUM OUTLETS, LLC** | | **$101,522.78** | |
| 3.7  CENTRALIA OUTLETS LLC<br>C/O JS PROPERTIES INC.<br>2620 BELLEVUE WAY, NE, PMB 122<br>BELLEVUE, WA 98004 | 11/13/2024 | $5,918.79 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | 12/12/2024 | $5,918.79 | |
| | 01/16/2025 | $5,918.79 | |
| **TOTAL CENTRALIA OUTLETS LLC** | | **$17,756.37** | |
| 3.8  CLPF PALM BEACH OUTLETS LLC<br>P.O. BOX 9468<br>NEW YORK, NY 10087-9468 | 12/23/2024 | $9,707.41 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | 01/09/2025 | $9,707.41 | |
| **TOTAL CLPF PALM BEACH OUTLETS LLC** | | **$19,414.82** | |
| 3.9  CLS FACILITIES MANAGEMENT SERVICES, INC.<br>CLS FACILITY SERVICES<br>8061 TYLER BLVD.<br>MENTOR, OH 44060 | 11/14/2024 | $2,472.71 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | 11/15/2024 | $1,387.19 | |
| | 11/29/2024 | $206.00 | |
| | 12/05/2024 | $707.77 | |
| | 12/12/2024 | $2,305.32 | |
| | 12/17/2024 | $4,095.03 | |
| | 12/20/2024 | $2,281.62 | |
| | 12/30/2024 | $1,699.76 | |
| | 01/21/2025 | $811.69 | |
| | 01/24/2025 | $1,024.00 | |
| **TOTAL CLS FACILITIES MANAGEMENT SERVICES, INC.** | | **$16,991.09** | |
| 3.10  COLORADO DEPARTMENT OF REVENUE<br>201 W. COLFAX AVE.<br>DENVER, CO 80261 - 0008 | 11/21/2024 | $2,615.20 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☑ Other  Taxes |
| | 12/16/2024 | $48.00 | |
| | 12/20/2024 | $6,107.12 | |
| **TOTAL COLORADO DEPARTMENT OF REVENUE** | | **$8,770.32** | |
| 3.11  CRAIG REALTY GROUP CITADEL, LLC<br>4100 MACARTHUR BLVD.<br>SUITE 100<br>NEWPORT BEACH, CA 92660 | 11/08/2024 | $30,099.26 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | 12/09/2024 | $30,099.26 | |
| | 01/06/2025 | $30,174.10 | |
| **TOTAL CRAIG REALTY GROUP CITADEL, LLC** | | **$90,372.62** | |
| 3.12  CRAIG REALTY GROUP-TULARE, LLC | 11/07/2024 | $8,765.00 | ☐ Secured debt |

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
|---|---|

| | | | |
|---|---|---|---|
| DEPT. LA 24898<br>PASADENA, CA 91185-4898 | 12/06/2024 | $8,765.00 | ☐ Unsecured loan repayments<br>☑ Suppliers or vendors |
| | 01/06/2025 | $8,765.00 | ☐ Services<br>☐ Other _____ |

| **TOTAL CRAIG REALTY GROUP-TULARE, LLC** | **$26,295.00** |
|---|---|

| 3.13 | DESERT HILLS PREMIUM OUTLETS<br>48400 SEMINOLE DRIVE SUITE 601<br>CABAZON, CA 92230 | 11/14/2024 | $37,235.59 | ☐ Secured debt<br>☐ Unsecured loan repayments |
|---|---|---|---|---|
| | | 11/27/2024 | $37,235.59 | ☑ Suppliers or vendors<br>☐ Services |
| | | 12/10/2024 | $37,235.59 | ☐ Other _____ |
| | | 12/24/2024 | $38,057.45 | |
| | | 01/14/2025 | $38,424.82 | |

| **TOTAL DESERT HILLS PREMIUM OUTLETS** | **$188,189.04** |
|---|---|

| 3.14 | EARTHPACK<br>1692 DEERE AVE.<br>IRVINE, CA 92606 | 11/21/2024 | $1,006.95 | ☐ Secured debt<br>☐ Unsecured loan repayments |
|---|---|---|---|---|
| | | 12/03/2024 | $24,661.00 | ☑ Suppliers or vendors<br>☐ Services |
| | | 12/10/2024 | $3,178.75 | ☐ Other _____ |
| | | 12/30/2024 | $678.15 | |
| | | 01/14/2025 | $4,027.80 | |

| **TOTAL EARTHPACK** | **$33,552.65** |
|---|---|

| 3.15 | FLORIDA DEPARTMENT OF REVENUE<br>400 W ROBINSON ST<br>STE N302<br>ORLANDO, FL 32801 | 11/20/2024 | $16,827.24 | ☐ Secured debt<br>☐ Unsecured loan repayments |
|---|---|---|---|---|
| | | 12/20/2024 | $28,745.45 | ☐ Suppliers or vendors<br>☐ Services |
| | | 01/28/2025 | $3,347.68 | ☑ Other  Taxes |

| **TOTAL FLORIDA DEPARTMENT OF REVENUE** | **$48,920.37** |
|---|---|

| 3.16 | FRO2MO BARSTOW LLC<br>33276 COLLECTION CENTER DRIVE<br>CHICAGO, IL 60693-0332 | 11/12/2024 | $8,606.31 | ☐ Secured debt<br>☐ Unsecured loan repayments |
|---|---|---|---|---|
| | | 12/09/2024 | $8,606.31 | ☑ Suppliers or vendors<br>☐ Services |
| | | 01/13/2025 | $11,063.79 | ☐ Other _____ |

| **TOTAL FRO2MO BARSTOW LLC** | **$28,276.41** |
|---|---|

| 3.17 | GILROY PREMIUM OUTLETS, LLC.<br>DBA GILROY PREMIUM OUTLETS<br>P.O. BOX 827762<br>PHILADELPHIA, PA 19182-7762 | 11/13/2024 | $16,164.81 | ☐ Secured debt<br>☐ Unsecured loan repayments |
|---|---|---|---|---|
| | | 11/27/2024 | $16,164.81 | ☑ Suppliers or vendors<br>☐ Services |
| | | 12/11/2024 | $16,164.81 | ☐ Other _____ |
| | | 12/26/2024 | $16,431.30 | |
| | | 01/14/2025 | $16,579.36 | |

| **TOTAL GILROY PREMIUM OUTLETS, LLC.** | **$81,505.09** |
|---|---|

| 3.18 | GRANITE TELECOMMUNICATIONS<br>1 HERITAGE DR<br>QUINCY, MA 02171 | 11/08/2024 | $472.77 | ☐ Secured debt<br>☐ Unsecured loan repayments |
|---|---|---|---|---|
| | | 12/13/2024 | $58,689.74 | ☑ Suppliers or vendors<br>☐ Services<br>☐ Other |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

| | | | |
|---|---|---|---|
| | **TOTAL GRANITE TELECOMMUNICATIONS** | **$59,162.51** | |

| 3.19 | GULF COAST FACTORY SHOPS LP<br>ELLENTON PREMIUM OUTLETS<br>P.O. BOX 776266<br>CHICAGO, IL 60677-6266 | 11/14/2024 | $15,881.63 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|---|---|---|---|---|
| | | 11/22/2024 | $15,881.63 | |
| | | 12/04/2024 | $15,881.63 | |
| | | 12/20/2024 | $15,881.63 | |
| | | 01/15/2025 | $16,115.93 | |

| | | | |
|---|---|---|---|
| | **TOTAL GULF COAST FACTORY SHOPS LP** | **$79,642.45** | |

| 3.20 | HAWAII DEPARTMENT OF TAXATION<br>P.O. BOX 1425<br>HONOLULU, HI 96806 - 1425 | 11/21/2024 | $3,144.20 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☑ Other  Taxes |
|---|---|---|---|---|
| | | 12/20/2024 | $5,635.17 | |

| | | | |
|---|---|---|---|
| | **TOTAL HAWAII DEPARTMENT OF TAXATION** | **$8,779.37** | |

| 3.21 | HAWAIIAN ELECTRIC COMPANY, INC<br>P.O. BOX 30260<br>HONOLULU, HI 96820-0260 | 11/27/2024 | $1,729.85 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|---|---|---|---|---|
| | | 11/27/2024 | $1,390.53 | |
| | | 12/27/2024 | $1,731.54 | |
| | | 12/27/2024 | $1,429.10 | |
| | | 01/27/2025 | $1,651.45 | |
| | | 01/27/2025 | $1,363.83 | |

| | | | |
|---|---|---|---|
| | **TOTAL HAWAIIAN ELECTRIC COMPANY, INC** | **$9,296.30** | |

| 3.22 | J.P. MORGAN CHASE BANK, N.A.<br>3 PARK PLAZA<br>FLOOR 09 - STE 900<br>IRVINE, CA 92614 | 11/04/2024 | $35,634.29 | ☑ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|---|---|---|---|---|
| | | 11/05/2024 | $184,139.58 | |
| | | 11/06/2024 | $144,440.36 | |
| | | 11/07/2024 | $62,868.65 | |
| | | 11/08/2024 | $41,266.51 | |
| | | 11/12/2024 | $46,752.24 | |
| | | 11/13/2024 | $356,255.40 | |
| | | 11/14/2024 | $99,709.71 | |
| | | 11/15/2024 | $47,986.12 | |
| | | 11/18/2024 | $42,085.42 | |
| | | 11/19/2024 | $203,992.60 | |
| | | 11/20/2024 | $161,846.94 | |
| | | 11/21/2024 | $77,267.44 | |
| | | 11/22/2024 | $43,931.76 | |
| | | 11/25/2024 | $39,606.57 | |
| | | 11/26/2024 | $220,377.04 | |
| | | 11/27/2024 | $157,309.45 | |
| | | 11/29/2024 | $84,398.64 | |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

| | |
|---|---|
| 12/02/2024 | $164,732.96 |
| 12/03/2024 | $606,122.54 |
| 12/04/2024 | $352,738.14 |
| 12/05/2024 | $94,145.55 |
| 12/06/2024 | $46,033.42 |
| 12/09/2024 | $43,117.74 |
| 12/10/2024 | $230,317.47 |
| 12/11/2024 | $216,190.12 |
| 12/12/2024 | $95,202.45 |
| 12/13/2024 | $61,143.86 |
| 12/16/2024 | $61,336.66 |
| 12/17/2024 | $303,328.26 |
| 12/18/2024 | $217,082.75 |
| 12/19/2024 | $119,044.71 |
| 12/20/2024 | $85,327.55 |
| 12/23/2024 | $94,437.14 |
| 12/24/2024 | $408,697.80 |
| 12/26/2024 | $293,015.88 |
| 12/27/2024 | $302,749.22 |
| 12/30/2024 | $28,901.53 |
| 12/31/2024 | $256,160.09 |
| 01/02/2025 | $172,462.29 |
| 01/03/2025 | $157,417.68 |
| 01/06/2025 | $58,736.93 |
| 01/07/2025 | $257,338.36 |
| 01/08/2025 | $113,255.07 |
| 01/09/2025 | $47,530.03 |
| 01/10/2025 | $29,467.57 |
| 01/13/2025 | $27,868.19 |
| 01/14/2025 | $113,372.80 |
| 01/15/2025 | $79,826.91 |
| 01/16/2025 | $42,424.34 |
| 01/17/2025 | $26,158.60 |
| 01/21/2025 | $22,235.77 |
| 01/22/2025 | $190,027.05 |
| 01/23/2025 | $54,624.13 |
| 01/24/2025 | $28,841.35 |
| 01/27/2025 | $26,787.56 |
| 01/28/2025 | $136,587.58 |
| 01/29/2025 | $79,584.89 |

**Part 2:**    **List Certain Transfers Made Before Filing for Bankruptcy**

|  |  |  |  |  |
|---|---|---:|---|---|
|  | | 01/30/2025 | $42,203.65 | |
|  | | 01/31/2025 | $27,355.81 | |
| | **TOTAL J.P. MORGAN CHASE BANK, N.A.** | | **$7,863,801.12** | |
| 3.23 | JERSEY SHORE PREMIUM OUTLETS,LLC<br>P.O. BOX 776307<br>CHICAGO, IL 60677-6307 | 11/14/2024 | $10,644.34 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | | 11/22/2024 | $10,644.34 | |
| | | 12/04/2024 | $10,644.34 | |
| | | 12/20/2024 | $10,644.34 | |
| | | 01/15/2025 | $10,644.34 | |
| | **TOTAL JERSEY SHORE PREMIUM OUTLETS,LLC** | | **$53,221.70** | |
| 3.24 | JG ELIZABETH II, LLC<br>P.O. BOX 775273<br>CHICAGO, IL 60677-5273 | 11/14/2024 | $26,062.01 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | | 11/22/2024 | $26,062.01 | |
| | | 12/04/2024 | $26,062.01 | |
| | | 12/20/2024 | $25,907.42 | |
| | | 01/15/2025 | $26,314.50 | |
| | **TOTAL JG ELIZABETH II, LLC** | | **$130,407.95** | |
| 3.25 | KLIGER-WEISS INFOSYSTEMS, INC.<br>201 OLD COUNTRY RD<br>SUITE 301<br>MELVILLE, NY 11747 | 11/07/2024 | $30.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | | 11/14/2024 | $24,644.00 | |
| | | 11/25/2024 | $121.53 | |
| | | 12/02/2024 | $28.63 | |
| | | 12/16/2024 | $24,235.77 | |
| | | 12/19/2024 | $65.40 | |
| | | 12/30/2024 | $1,165.00 | |
| | | 01/16/2025 | $23,947.00 | |
| | | 01/23/2025 | $119.52 | |
| | **TOTAL KLIGER-WEISS INFOSYSTEMS, INC.** | | **$74,356.85** | |
| 3.26 | LAS AMERICAS PREMIUM OUTLETS<br>P.O. BOX 822596<br>PHILADELPHIA, PA 19182-2596 | 12/20/2024 | $14,445.13 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | | 12/26/2024 | $21,007.51 | |
| | | 01/14/2025 | $21,258.61 | |
| | **TOTAL LAS AMERICAS PREMIUM OUTLETS** | | **$56,711.25** | |
| 3.27 | LAS VEGAS NORTH PREMIUM OUTLETS<br>LAS VEGAS OUTLETS, LLC<br>P.O. BOX 827724<br>PHILADELPHIA, PA 19182-7724 | 11/13/2024 | $27,026.06 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | | 12/09/2024 | $27,026.06 | |
| | | 12/17/2024 | $27,026.06 | |
| | | 12/26/2024 | $27,026.06 | |
| | | 01/14/2025 | $27,290.83 | |
| | **TOTAL LAS VEGAS NORTH PREMIUM OUTLETS** | | **$135,395.07** | |

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
| --- | --- |

| 3.28 | LAS VEGAS SOUTH OUTLETS, LLC<br>DBA PREMIUM OUTLET PARTNERS<br>P.O. BOX 827695<br>PHILADELPHIA, PA 19182-7695 | 11/27/2024 | $23,511.70 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | | 12/06/2024 | $23,511.70 | |
| | | 12/11/2024 | $23,511.70 | |
| | | 12/17/2024 | $23,511.70 | |
| | | 01/14/2025 | $23,511.70 | |

|  | **TOTAL LAS VEGAS SOUTH OUTLETS, LLC** | **$117,558.50** |
| --- | --- | --- |

| 3.29 | LIVERMORE PREMIUM OUTLETS, LLC<br>2696 SOLUTION CENTER<br>CHICAGO, IL 60677-2006 | 11/14/2024 | $19,354.16 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | | 11/22/2024 | $18,415.91 | |
| | | 12/05/2024 | $18,415.91 | |
| | | 12/20/2024 | $18,785.60 | |
| | | 01/15/2025 | $18,993.75 | |

|  | **TOTAL LIVERMORE PREMIUM OUTLETS, LLC** | **$93,965.33** |
| --- | --- | --- |

| 3.30 | LOOMIS ARMORED US, LLC<br>DBA LOOMIS<br>DEPT. 0757 P.O. BOX 120001<br>DALLAS, TX 75312-0757 | 11/22/2024 | $14,957.23 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| | | 12/30/2024 | $14,799.08 | |
| | | 01/29/2025 | $13,980.84 | |

|  | **TOTAL LOOMIS ARMORED US, LLC** | **$43,737.15** |
| --- | --- | --- |

| 3.31 | MERCHANTS BANK<br>102 EAST THIRD STREET<br>WINONA, MN 55987 | 11/04/2024 | $1,494.83 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☑ Services<br>☐ Other _____ |
| | | 11/04/2024 | $1,263.06 | |
| | | 11/04/2024 | $1,053.12 | |
| | | 11/04/2024 | $1,002.88 | |
| | | 11/04/2024 | $999.42 | |
| | | 11/04/2024 | $930.58 | |
| | | 11/04/2024 | $928.07 | |
| | | 11/04/2024 | $853.90 | |
| | | 11/04/2024 | $813.99 | |
| | | 11/04/2024 | $774.96 | |
| | | 11/04/2024 | $766.73 | |
| | | 11/04/2024 | $741.76 | |
| | | 11/04/2024 | $645.90 | |
| | | 11/04/2024 | $610.97 | |
| | | 11/04/2024 | $598.46 | |
| | | 11/04/2024 | $552.61 | |
| | | 11/04/2024 | $546.46 | |
| | | 11/04/2024 | $546.14 | |
| | | 11/04/2024 | $528.54 | |
| | | 11/04/2024 | $527.08 | |
| | | 11/04/2024 | $519.80 | |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

| | |
|------------|------------|
| 11/04/2024 | $506.43 |
| 11/04/2024 | $506.20 |
| 11/04/2024 | $473.24 |
| 11/04/2024 | $410.15 |
| 11/04/2024 | $398.17 |
| 11/04/2024 | $379.57 |
| 11/04/2024 | $373.34 |
| 11/04/2024 | $347.83 |
| 11/04/2024 | $335.07 |
| 11/04/2024 | $317.25 |
| 11/04/2024 | $290.92 |
| 11/04/2024 | $271.74 |
| 11/04/2024 | $267.79 |
| 11/04/2024 | $263.18 |
| 11/04/2024 | $252.45 |
| 11/04/2024 | $219.65 |
| 11/04/2024 | $200.67 |
| 11/04/2024 | $180.88 |
| 11/04/2024 | $147.22 |
| 11/04/2024 | $147.02 |
| 11/04/2024 | $130.76 |
| 11/04/2024 | $110.17 |
| 11/04/2024 | $105.98 |
| 11/04/2024 | $102.03 |
| 11/04/2024 | $101.02 |
| 11/04/2024 | $97.79 |
| 11/04/2024 | $94.51 |
| 11/04/2024 | $86.50 |
| 11/04/2024 | $78.83 |
| 11/04/2024 | $77.61 |
| 11/04/2024 | $76.49 |
| 11/04/2024 | $74.07 |
| 11/04/2024 | $68.70 |
| 11/04/2024 | $59.94 |
| 11/04/2024 | $9.95 |
| 11/05/2024 | $1,027.13 |
| 11/05/2024 | $802.44 |
| 11/05/2024 | $711.86 |
| 11/05/2024 | $655.23 |
| 11/05/2024 | $637.67 |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

| | |
|---|---|
| 11/05/2024 | $614.34 |
| 11/05/2024 | $457.64 |
| 11/05/2024 | $455.24 |
| 11/05/2024 | $440.49 |
| 11/05/2024 | $242.27 |
| 11/05/2024 | $196.27 |
| 11/05/2024 | $162.49 |
| 11/05/2024 | $158.62 |
| 11/05/2024 | $154.84 |
| 11/05/2024 | $153.47 |
| 11/05/2024 | $152.06 |
| 11/05/2024 | $134.76 |
| 11/05/2024 | $132.33 |
| 11/05/2024 | $113.27 |
| 11/05/2024 | $93.91 |
| 11/05/2024 | $88.62 |
| 11/22/2024 | $5.00 |
| 11/22/2024 | $5.00 |
| 11/29/2024 | $12.86 |
| 12/03/2024 | $2,255.08 |
| 12/03/2024 | $2,128.08 |
| 12/03/2024 | $1,696.63 |
| 12/03/2024 | $1,694.93 |
| 12/03/2024 | $1,666.68 |
| 12/03/2024 | $1,558.97 |
| 12/03/2024 | $1,471.31 |
| 12/03/2024 | $1,456.98 |
| 12/03/2024 | $1,428.39 |
| 12/03/2024 | $1,344.86 |
| 12/03/2024 | $1,308.81 |
| 12/03/2024 | $1,274.48 |
| 12/03/2024 | $1,194.94 |
| 12/03/2024 | $1,145.14 |
| 12/03/2024 | $1,112.65 |
| 12/03/2024 | $1,029.38 |
| 12/03/2024 | $1,027.97 |
| 12/03/2024 | $995.74 |
| 12/03/2024 | $871.85 |
| 12/03/2024 | $853.12 |
| 12/03/2024 | $840.16 |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

| | |
|---|---|
| 12/03/2024 | $818.21 |
| 12/03/2024 | $783.81 |
| 12/03/2024 | $761.42 |
| 12/03/2024 | $753.37 |
| 12/03/2024 | $728.28 |
| 12/03/2024 | $709.53 |
| 12/03/2024 | $606.46 |
| 12/03/2024 | $578.39 |
| 12/03/2024 | $570.71 |
| 12/03/2024 | $547.26 |
| 12/03/2024 | $510.83 |
| 12/03/2024 | $507.52 |
| 12/03/2024 | $423.99 |
| 12/03/2024 | $396.33 |
| 12/03/2024 | $292.34 |
| 12/03/2024 | $292.24 |
| 12/03/2024 | $272.27 |
| 12/03/2024 | $230.22 |
| 12/03/2024 | $203.27 |
| 12/03/2024 | $180.50 |
| 12/03/2024 | $171.30 |
| 12/03/2024 | $162.74 |
| 12/03/2024 | $161.13 |
| 12/03/2024 | $158.95 |
| 12/03/2024 | $156.56 |
| 12/03/2024 | $147.24 |
| 12/03/2024 | $146.75 |
| 12/03/2024 | $145.79 |
| 12/03/2024 | $145.31 |
| 12/03/2024 | $136.52 |
| 12/03/2024 | $125.73 |
| 12/03/2024 | $59.94 |
| 12/03/2024 | $9.95 |
| 12/03/2024 | $9.95 |
| 12/04/2024 | $1,853.46 |
| 12/04/2024 | $1,119.16 |
| 12/04/2024 | $1,113.94 |
| 12/04/2024 | $1,087.33 |
| 12/04/2024 | $1,008.71 |
| 12/04/2024 | $929.95 |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

| | |
|---|---|
| 12/04/2024 | $682.49 |
| 12/04/2024 | $638.93 |
| 12/04/2024 | $601.76 |
| 12/04/2024 | $424.36 |
| 12/04/2024 | $264.10 |
| 12/04/2024 | $262.08 |
| 12/04/2024 | $237.21 |
| 12/04/2024 | $233.36 |
| 12/04/2024 | $225.24 |
| 12/04/2024 | $221.13 |
| 12/04/2024 | $189.19 |
| 12/04/2024 | $188.85 |
| 12/04/2024 | $186.89 |
| 12/04/2024 | $156.61 |
| 12/04/2024 | $153.07 |
| 12/05/2024 | $1,200.81 |
| 12/10/2024 | $1,115.38 |
| 12/10/2024 | $258.39 |
| 12/16/2024 | $1,076.85 |
| 12/16/2024 | $406.32 |
| 12/18/2024 | $50.94 |
| 12/20/2024 | $271.00 |
| 12/23/2024 | $150.09 |
| 12/24/2024 | $5.00 |
| 12/24/2024 | $5.00 |
| 12/26/2024 | $814.99 |
| 12/30/2024 | $797.21 |
| 01/03/2025 | $2,983.11 |
| 01/03/2025 | $2,592.42 |
| 01/03/2025 | $2,321.07 |
| 01/03/2025 | $2,279.57 |
| 01/03/2025 | $2,106.96 |
| 01/03/2025 | $1,880.30 |
| 01/03/2025 | $1,850.53 |
| 01/03/2025 | $1,847.39 |
| 01/03/2025 | $1,847.01 |
| 01/03/2025 | $1,820.90 |
| 01/03/2025 | $1,639.02 |
| 01/03/2025 | $1,578.57 |
| 01/03/2025 | $1,560.84 |

**Part 2:**     **List Certain Transfers Made Before Filing for Bankruptcy**

| | |
|---|---|
| 01/03/2025 | $1,526.10 |
| 01/03/2025 | $1,452.44 |
| 01/03/2025 | $1,386.73 |
| 01/03/2025 | $1,379.84 |
| 01/03/2025 | $1,343.48 |
| 01/03/2025 | $1,264.15 |
| 01/03/2025 | $1,182.39 |
| 01/03/2025 | $1,167.43 |
| 01/03/2025 | $1,058.29 |
| 01/03/2025 | $1,055.60 |
| 01/03/2025 | $1,025.28 |
| 01/03/2025 | $962.64 |
| 01/03/2025 | $907.54 |
| 01/03/2025 | $795.42 |
| 01/03/2025 | $785.47 |
| 01/03/2025 | $763.67 |
| 01/03/2025 | $762.79 |
| 01/03/2025 | $667.68 |
| 01/03/2025 | $633.28 |
| 01/03/2025 | $560.55 |
| 01/03/2025 | $475.27 |
| 01/03/2025 | $410.83 |
| 01/03/2025 | $370.16 |
| 01/03/2025 | $363.20 |
| 01/03/2025 | $350.40 |
| 01/03/2025 | $340.99 |
| 01/03/2025 | $336.99 |
| 01/03/2025 | $335.63 |
| 01/03/2025 | $332.88 |
| 01/03/2025 | $332.86 |
| 01/03/2025 | $309.94 |
| 01/03/2025 | $298.80 |
| 01/03/2025 | $287.20 |
| 01/03/2025 | $279.79 |
| 01/03/2025 | $217.30 |
| 01/03/2025 | $204.86 |
| 01/03/2025 | $192.68 |
| 01/03/2025 | $188.24 |
| 01/03/2025 | $172.95 |
| 01/03/2025 | $9.95 |

| Date | Amount | |
|---|---|---|
| 01/03/2025 | $9.95 | |
| 01/06/2025 | $2,379.22 | |
| 01/06/2025 | $2,323.40 | |
| 01/06/2025 | $1,496.99 | |
| 01/06/2025 | $1,325.19 | |
| 01/06/2025 | $1,299.90 | |
| 01/06/2025 | $1,128.65 | |
| 01/06/2025 | $1,124.60 | |
| 01/06/2025 | $766.02 | |
| 01/06/2025 | $731.73 | |
| 01/06/2025 | $685.94 | |
| 01/06/2025 | $595.96 | |
| 01/06/2025 | $398.34 | |
| 01/06/2025 | $397.82 | |
| 01/06/2025 | $397.33 | |
| 01/06/2025 | $377.50 | |
| 01/06/2025 | $347.37 | |
| 01/06/2025 | $332.12 | |
| 01/06/2025 | $324.89 | |
| 01/06/2025 | $314.30 | |
| 01/06/2025 | $250.24 | |
| 01/06/2025 | $240.18 | |
| 01/06/2025 | $189.54 | |
| 01/14/2025 | $1,583.78 | |
| 01/14/2025 | $128.65 | |
| 01/17/2025 | $3,124.96 | |
| 01/21/2025 | $5.00 | |
| 01/21/2025 | $5.00 | |
| **TOTAL MERCHANTS BANK** | **$165,144.90** | |

| 3.32 MILPITAS MILLS LP | | |
|---|---|---|
| P.O. BOX 409714 | 11/14/2024 | $25,379.01 |
| ATLANTA, GA 30384-9714 | 11/21/2024 | $25,586.39 |
| | 12/03/2024 | $25,586.39 |
| | 12/20/2024 | $25,586.39 |
| | 01/13/2025 | $26,616.39 |

☐ Secured debt
☐ Unsecured loan repayments
☑ Suppliers or vendors
☐ Services
☐ Other _____

| **TOTAL MILPITAS MILLS LP** | **$128,754.57** |
|---|---|

| 3.33 NEVADA DEPARTMENT OF TAXATION | | |
|---|---|---|
| 1550 COLLEGE PARKWAY | 11/20/2024 | $19,619.37 |
| SUITE 115 | 12/26/2024 | $26,291.22 |
| CARSON CITY, NV 89706 | | |

☐ Secured debt
☐ Unsecured loan repayments
☐ Suppliers or vendors
☐ Services
☑ Other  Taxes _____

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
| --- | --- |

|  |  |  |  |  |
| --- | --- | --- | --- | --- |
|  | **TOTAL NEVADA DEPARTMENT OF TAXATION** | | **$45,910.59** | |
| 3.34 | ONTARIO MILLS, LP<br>P.O. BOX 198844<br>ATLANTA, GA 30384-8844 | 11/14/2024<br>11/21/2024<br>12/03/2024<br>12/20/2024<br>01/13/2025 | $20,759.99<br>$20,759.99<br>$20,759.99<br>$20,759.99<br>$20,759.99 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|  | **TOTAL ONTARIO MILLS, LP** | | **$103,799.95** | |
| 3.35 | ORANGE CITY MILLS, LP<br>P.O. BOX 281294<br>ATLANTA, GA 30384-1294 | 11/14/2024<br>11/21/2024<br>12/03/2024<br>12/19/2024<br>01/13/2025 | $18,003.22<br>$18,003.22<br>$18,003.22<br>$18,003.22<br>$18,007.13 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|  | **TOTAL ORANGE CITY MILLS, LP** | | **$90,020.01** | |
| 3.36 | OUTLETS AT TRAVERSE MOUNTAIN, LLC<br>4100 MACARTHUR BLVD.<br>SUITE 100<br>NEWPORT BEACH, CA 92660 | 11/08/2024<br>11/08/2024<br>12/11/2024<br>12/11/2024<br>01/08/2025<br>01/08/2025 | $10,034.95<br>$11,648.27<br>$10,643.95<br>$12,381.77<br>$10,689.29<br>$12,426.70 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|  | **TOTAL OUTLETS AT TRAVERSE MOUNTAIN, LLC** | | **$67,824.93** | |
| 3.37 | PG&E<br>300 LAKESIDE DRIVE<br>SUITE 210<br>OAKLAND, CA 94612 | 11/07/2024<br>11/22/2024<br>12/24/2024<br>12/24/2024<br>01/22/2025<br>01/24/2025 | $1,867.29<br>$1,421.47<br>$1,338.29<br>$853.50<br>$1,033.47<br>$1,340.53 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|  | **TOTAL PG&E** | | **$7,854.55** | |
| 3.38 | PHOENIX PREMIUM OUTLETS, LLC<br>7517 SOLUTION CENTER<br>CHICAGO, IL 60677-7005 | 11/14/2024<br>11/22/2024<br>12/04/2024<br>12/20/2024<br>01/15/2025 | $13,938.34<br>$13,938.34<br>$13,938.34<br>$13,938.34<br>$13,938.34 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|  | **TOTAL PHOENIX PREMIUM OUTLETS, LLC** | | **$69,691.70** | |
| 3.39 | PISMO BEACH PREMIUM OUTLETS LLC<br>P.O. BOX 772964<br>CHICAGO, IL 60677-0264 | 11/14/2024<br>11/26/2024 | $21,031.77<br>$21,031.77 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

|  |  | 12/04/2024 | $21,031.77 | ☐ Other _____ |
|  |  | 12/20/2024 | $21,031.77 |  |
|  |  | 01/15/2025 | $21,217.92 |  |

| **TOTAL PISMO BEACH PREMIUM OUTLETS LLC** | **$105,345.00** |

| 3.40 | PLAZA LAS AMERICAS, LLC<br>P.O. BOX 713463<br>CHICAGO, IL 60677-4363 | 11/13/2024 | $7,981.65 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |

| **TOTAL PLAZA LAS AMERICAS, LLC** | **$7,981.65** |

| 3.41 | PREMIUM OUTLET PARTNERS LP<br>JERSEY SHORE PREMIUM OUTLETS<br>CHICAGO, IL 60677-3607 | 11/14/2024 | $7,689.10 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|  |  | 12/10/2024 | $7,689.10 |  |
|  |  | 12/19/2024 | $7,689.10 |  |
|  |  | 12/26/2024 | $7,843.58 |  |
|  |  | 01/14/2025 | $7,961.48 |  |

| **TOTAL PREMIUM OUTLET PARTNERS LP** | **$38,872.36** |

| 3.42 | RED SPARKS SPE LLC<br>P.O. BOX 92295<br>LAS VEGAS, NV 89193-7951 | 11/08/2024 | $10,570.42 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|  |  | 11/15/2024 | $10,570.42 |  |
|  |  | 11/19/2024 | $7,837.06 |  |
|  |  | 12/09/2024 | $10,570.42 |  |
|  |  | 01/08/2025 | $10,570.42 |  |

| **TOTAL RED SPARKS SPE LLC** | **$50,118.74** |

| 3.43 | SILVER SANDS GL I, LLC<br>7282 SOLUTION CENTER<br>CHICAGO, IL 60677-7002 | 11/14/2024 | $14,670.64 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|  |  | 11/22/2024 | $14,670.64 |  |
|  |  | 12/05/2024 | $14,670.64 |  |
|  |  | 12/20/2024 | $14,670.64 |  |
|  |  | 01/15/2025 | $14,670.64 |  |

| **TOTAL SILVER SANDS GL I, LLC** | **$73,353.20** |

| 3.44 | SIMON FINANCING PARTNERSHIP, LP<br>FOLSOM PREMIUM OUTLETS<br>P.O. BOX 822997<br>PHILADELPHIA, PA 19182-2997 | 11/14/2024 | $15,844.45 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|  |  | 12/12/2024 | $15,844.45 |  |
|  |  | 12/23/2024 | $15,844.45 |  |
|  |  | 12/24/2024 | $15,844.45 |  |
|  |  | 01/14/2025 | $15,989.48 |  |

| **TOTAL SIMON FINANCING PARTNERSHIP, LP** | **$79,367.28** |

| 3.45 | SIMON PROPERTY GROUP LP<br>ORLANDO OUTLET OWNERS LLC<br>P.O. BOX 772811<br>CHICAGO, IL 60677-2811 | 11/14/2024 | $22,764.53 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services |
|  |  | 11/14/2024 | $15,699.90 |  |
|  |  | 11/22/2024 | $16,045.70 |  |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

|  |  |  |
|---|---|---|
| 11/22/2024 | $22,925.23 | ☐ Other _____ |
| 12/04/2024 | $16,045.70 |  |
| 12/04/2024 | $22,925.23 |  |
| 12/20/2024 | $16,045.70 |  |
| 12/20/2024 | $22,925.23 |  |
| 01/15/2025 | $22,930.96 |  |
| 01/15/2025 | $16,224.55 |  |

|  |  |
|---|---|
| **TOTAL SIMON PROPERTY GROUP LP** | **$194,532.73** |

3.46 SOUTHERN CALIF. EDISON CO.
P.O. BOX 300
ROSEMEAD, CA 91772-0001

| Date | Amount |  |
|---|---|---|
| 11/12/2024 | $1,036.58 | ☐ Secured debt |
| 11/12/2024 | $600.69 | ☐ Unsecured loan repayments |
| 11/14/2024 | $648.78 | ☑ Suppliers or vendors |
| 11/18/2024 | $1,214.15 | ☐ Services |
| 11/18/2024 | $1,071.56 | ☐ Other _____ |
| 12/09/2024 | $510.64 |  |
| 12/10/2024 | $799.05 |  |
| 12/16/2024 | $530.64 |  |
| 12/18/2024 | $1,080.35 |  |
| 12/18/2024 | $809.90 |  |
| 01/08/2025 | $547.25 |  |
| 01/13/2025 | $902.93 |  |
| 01/15/2025 | $663.57 |  |
| 01/21/2025 | $1,128.19 |  |
| 01/21/2025 | $795.26 |  |

|  |  |
|---|---|
| **TOTAL SOUTHERN CALIF. EDISON CO.** | **$12,339.54** |

3.47 SPG FINANCE II, LLC
VACAVILLE PREMIUM OUTLETS
P.O. BOX 822983
PHILADELPHIA, PA 19182-2983

| Date | Amount |  |
|---|---|---|
| 11/14/2024 | $12,539.50 | ☐ Secured debt |
| 12/11/2024 | $12,539.50 | ☐ Unsecured loan repayments |
| 12/19/2024 | $12,539.50 | ☑ Suppliers or vendors |
| 12/26/2024 | $12,758.25 | ☐ Services |
| 01/14/2025 | $12,946.32 | ☐ Other _____ |

|  |  |
|---|---|
| **TOTAL SPG FINANCE II, LLC** | **$63,323.07** |

3.48 SPYDER CRAIG GROUP
OUTLETS AT CASTLE ROCK
CRAIG REALTY GROUP
PASADENA, CA 91189-3083

| Date | Amount |  |
|---|---|---|
| 11/08/2024 | $11,325.32 | ☐ Secured debt |
| 12/06/2024 | $11,325.32 | ☐ Unsecured loan repayments |
| 01/06/2025 | $11,369.04 | ☑ Suppliers or vendors |
|  |  | ☐ Services |
|  |  | ☐ Other _____ |

|  |  |
|---|---|
| **TOTAL SPYDER CRAIG GROUP** | **$34,019.68** |

3.49 SRE ONTARIO
P.O. BOX 850803
MINNEAPOLIS, MN 55485-0803

| Date | Amount |  |
|---|---|---|
| 11/12/2024 | $15,071.92 | ☐ Secured debt |
| 12/09/2024 | $15,071.92 | ☐ Unsecured loan repayments |
|  |  | ☑ Suppliers or vendors |
|  |  | ☐ Services |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|-----------------------------------------------------------|

|  | | | |
|--|--|--|--|
| | 01/10/2025 | $15,071.92 | ☐ Other _____ |
| **TOTAL SRE ONTARIO** | | **$45,215.76** | |

| 3.50 ST. AUGUSTINE PREMIUM OUTLETS<br>P.O. BOX 822946<br>PHILADELPHIA, PA 19182-2946 | 11/14/2024 | $7,858.85 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|--|--|--|--|
| | 11/27/2024 | $7,858.85 | |
| | 12/11/2024 | $7,858.85 | |
| | 12/24/2024 | $7,986.14 | |
| | 01/15/2025 | $8,127.77 | |
| **TOTAL ST. AUGUSTINE PREMIUM OUTLETS** | | **$39,690.46** | |

| 3.51 SUNRISE MILLS (MLP) LIMITED PARTNERSHIP<br>225 WEST WASHINGTON STREET<br>INDIANAPOLIS, IN 46204-3438 | 11/14/2024 | $16,499.03 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|--|--|--|--|
| | 11/21/2024 | $16,499.03 | |
| | 12/03/2024 | $16,499.03 | |
| | 12/20/2024 | $16,499.03 | |
| | 01/13/2025 | $16,511.55 | |
| **TOTAL SUNRISE MILLS (MLP) LIMITED PARTNERSHIP** | | **$82,507.67** | |

| 3.52 TAMPA PREMIUM OUTLETS LLC<br>TAMPA PREMIUM OUTLETS<br>P.O. BOX 776226<br>CHICAGO, IL 60677-6226 | 11/14/2024 | $12,235.80 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|--|--|--|--|
| | 11/22/2024 | $12,213.43 | |
| | 12/04/2024 | $12,213.43 | |
| | 12/20/2024 | $12,213.43 | |
| | 01/14/2025 | $12,213.43 | |
| **TOTAL TAMPA PREMIUM OUTLETS LLC** | | **$61,089.52** | |

| 3.53 TANGER SAN MARC, LLC<br>3200 NORTHLINE AVENUE<br>SUITE 360<br>GREENSBORO, NC 27408 | 11/14/2024 | $9,176.31 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|--|--|--|--|
| | 12/16/2024 | $9,176.31 | |
| | 01/09/2025 | $9,176.31 | |
| **TOTAL TANGER SAN MARC, LLC** | | **$27,528.93** | |

| 3.54 TDI SIGNS<br>13158 ARCTIC CIRCLE<br>SANTA FE SPRINGS, CA 90670 | 11/15/2024 | $2,400.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|--|--|--|--|
| | 12/20/2024 | $1,050.00 | |
| | 01/03/2025 | $16,248.08 | |
| **TOTAL TDI SIGNS** | | **$19,698.08** | |

| 3.55 THE ZELLMAN GROUP, LLC<br>2200 NORTHERN BLVD.<br>STE 103<br>GREENVALE, NY 11548 | 12/05/2024 | $10,620.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
|--|--|--|--|
| **TOTAL THE ZELLMAN GROUP, LLC** | | **$10,620.00** | |

| 3.56 UTAH STATE TAX COMMISSION | 11/21/2024 | $6,976.23 | ☐ Secured debt |
|--|--|--|--|

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
|---|---|

| | | | |
|---|---|---|---|
| 210 NORTH 1950 WEST<br>SALT LAKE CITY, UT 84134 | 12/23/2024 | $15,637.46 | ☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☑ Other  Taxes |
| **TOTAL UTAH STATE TAX COMMISSION** | | **$22,613.69** | |
| 3.57 WAIKELE PREMIUM OUTLETS<br>P.O. BOX 822909<br>PHILADELPHIA, PA 19182-2909 | 11/14/2024<br>11/27/2024<br>12/11/2024<br>12/24/2024<br>01/14/2025 | $26,445.80<br>$26,445.80<br>$26,445.80<br>$26,445.80<br>$26,772.40 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| **TOTAL WAIKELE PREMIUM OUTLETS** | | **$132,555.60** | |
| 3.58 WASHINGTON STATE DEPARTMENT OF REVENUE<br>P.O. BOX 47464<br>OLYMPIA, WA 98504 - 7464 | 11/21/2024<br>12/23/2024 | $4,895.01<br>$7,633.08 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☑ Other  Taxes |
| **TOTAL WASHINGTON STATE DEPARTMENT OF REVENUE** | | **$12,528.09** | |
| 3.59 WOODBURN PREMIUM OUTLETS, LLC<br>7584 SOLUTION CENTER<br>CHICAGO, IL 60677-7055 | 11/14/2024<br>11/22/2024<br>12/04/2024<br>12/20/2024<br>01/15/2025 | $16,581.42<br>$16,581.42<br>$16,581.42<br>$16,581.42<br>$16,766.47 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| **TOTAL WOODBURN PREMIUM OUTLETS, LLC** | | **$83,092.15** | |
| 3.60 WOODBURY COMMON PREMIUM OUTLET<br>P.O. BOX 822884<br>PHILADELPHIA, PA 19182-2884 | 11/14/2024<br>11/27/2024<br>12/11/2024<br>12/24/2024<br>01/14/2025 | $17,373.91<br>$17,373.91<br>$17,373.91<br>$17,373.91<br>$17,373.91 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☑ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| **TOTAL WOODBURY COMMON PREMIUM OUTLET** | | **$86,869.55** | |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None.

| Insider's Name and Address and Relationship to Debtor | Dates | Amount | Reasons for Payment |
|---|---|---|---|

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

5. **Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None.

| Creditor's Name and Address | Description of the property | Date | Value of Property |
|---|---|---|---|
| | | | |

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

6. **Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None.

| Creditor's Name and Address | Description of Action Creditor Took | Date Action Taken | Account Number | Amount |
|-----------------------------|-------------------------------------|-------------------|----------------|--------|

| **Part 3:** | **Legal Actions or Assignments** |

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None.

| | Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Address | Status of Case |
|---|---|---|---|---|
| 7.1 | GULF COAST FACTORY SHOPS LIMITED PARTNERSHIIP, AN ILLINOIS LIMITED PARTNERSHIP V. VOLCOM RETAIL OUTLETS, LLC, A DELAWARE LIMITED LIABILITY COMPANY D/B/A "VOLCOM." 2024CA1747 | BREACH OF LEASE | IN THE CIRCUIT COURT OF THE 12TH JUDICIAL CIRCUIT IN AND FOR MANATEE COUNTY, FLORIDA 1051 MANATEE AVENUE BRADENTON, FL 34205 USA | PENDING |
| 7.2 | ORLANDO OUTLET OWNER, LLC, A DELAWARE LIMITED LIABILITY COMPANY V. VOLCOM RETAIL OUTLETS, LLC, A DELAWARE LIMITED LIABILITY COMPANY D/B/A "VOLCOM," 2024-CA-009557-O | BREACH OF LEASE | IN THE CIRCUIT COURT OF THE 9TH JUDICIAL CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA 425 N. ORANGE AVENUE ORLANDO, FL 32801 USA | PENDING |
| 7.3 | ROBIN SCHABER EEEMSH230829-10982 | CIVIL RIGHTS | OREGON BUREAU OF LABOR & INDUSTRIES, CIVIL RIGHTS DIVISION 1400 EXECUTIVE PARKWAY SUITE 200 EUGENE, OR 97401-7103 | CONCLUDED |
| 7.4 | SILVER SANDS GL I, LLC, A DELAWARE LIMITED LIABILITY COMPANY V. VOLCOM RETAIL OUTLETS, LLC, A DELAWARE LIMITED LIABILITY COMPANY D/B/A "VOLCOM," 24CA513 | BREACH OF LEASE | IN THE CIRCUIT COURT OF THE 1ST JUDICIAL CIRCUIT IN AND FOR WALTON COUNTY, FLORIDA 571 HIGHWAY 90 EAST DEFUNIAK SPRINGS, FL 32433 USA | PENDING |
| 7.5 | TAMPA PREMIUM OUTLETS, LLC DELAWARE LIMITED LIABILITY COMPANY V. VOLCOM RETAIL OUTLETS, LLC, A DELAWARE LIMITED LIABILITY COMPANY 2024CA002819CAAXES | BREACH OF LEASE | IN THE CIRCUIT COURT OF THE 6TH JUDICIAL CIRCUIT IN AND FOR PASCO COUNTY, FLORIDA 38053 LIVE OAK AVENUE DADE CITY, FL 33523 USA | PENDING |

| Part 3: | Legal Actions or Assignments |
|---|---|

8. **Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None.

| Custodian's Name and Address | Court Name and Address | Case Title and Number | Date | Description of Property | Value |
|---|---|---|---|---|---|

| Part 4: | Certain Gifts and Charitable Contributions |
|---------|---------------------------------------------|

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None.

| Recipient's Name and Address | Recipient's Relation to Debtor | Description of the Gifts and Contributions | Dates Given | Value |
|------------------------------|-------------------------------|--------------------------------------------|-------------|-------|

| **Part 5:** | **Certain Losses** |
| --- | --- |

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None.

| Description of the property lost and how the lost occurred | Amount of Payments Received for the Loss | Date of Loss | Value of Property Lost |
| --- | --- | --- | --- |
| | If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property). | | |

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

11. **Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None.

| Who was Paid or Who Received the Transfer? Address | Email / Website | Who Made the Payment, if not Debtor | If not Money, Describe any Property Transferred | Dates | Value |
|---|---|---|---|---|---|

**Part 6:**     Certain Payments or Transfers

12. **Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device. Do not include transfers already listed on this statement.

☑ None.

| Name of Trust or Device | Trustee | Describe any Property Transfered | Dates Transfers Were Made | Total Amount / Value |
|---|---|---|---|---|

**Part 6:** **Certain Payments or Transfers**

13. **Transfers not already listed on this statement**

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None.

| Name and Address of Transferee, Relationship to Debtor | Description of Property | Date Transfer was Made | Total Amount or Value |
|---|---|---|---|

| **Part 7:** | **Previous Locations** |
|---|---|

14. **Previous Addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ None.

| Address | Dates of Occupancy |
|---|---|
| 14.1  820 W STACY RD<br>UNIT 0638, PREMISES IN THE ALLEN PREMIUM OUTLETS<br>ALLEN, TX 75013 | 08/17/2017 – 01/31/2023 |
| 14.2  5050 FACTORY SHOPS BLVD, #210<br>CASTLE ROCK, CO 80108 | 06/08/2021 – 09/08/2024 |
| 14.3  4463 CAMINO DE LA PLAZA #125<br>SAN DIEGO, CA 92173 | 08/20/2014 – 10/20/2024 |

| Part 8: | Health Care Bankruptcies |
|---------|--------------------------|

15. **Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ None.

| Facility Name and Address | Nature of the Business Operation, Including Type of Services the Debtor Provides | Location Where Patient Records are Maintained (if Different from Facility Address). If Electronic, Identify any Service Provider | If Debtor Provides Meals and Housing, Number of Patients in Debtor's Care | How are Records Kept? |
|---|---|---|---|---|

| Part 9: | Personally Identifiable Information |
|---------|-------------------------------------|

16. **Does the debtor collect and retain personally identifiable information of customers?**

☐ No

☑ Yes. State the nature of the information collected and retained.

Name, Address, Email, Phone, Birthdate

Does the debtor have a privacy policy about that information?

☐ No

☑ Yes

| Part 9: | Personally Identifiable Information |
|---------|-------------------------------------|

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐ No. Go to Part 10.
☑ Yes. Does the debtor serve as plan administrator?

☐ No. Go to Part 10.
☑ Yes

Describe:   Liberated Brands, LLC 401(k) Plan          EIN:   83-3562718

Has the plan been terminated?

☑ No
☐ Yes

| **Part 10:** | **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units** |

18. **Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None.

| Financial Institution Name and Address | Last 4 Digits of Account Number | Type of Account | Date of Closing | Last Balance |
|---|---|---|---|---|

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

19. **Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None.

| Depository Institution Name and Address | Names of Anyone with Access to it and Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

20. **Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☐ None.

| Facility Name and Address | Names of Anyone with Access to it | Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|---|
| 20.1 EXTRA SPACE STORAGE<br>115 MANATEE AVE W<br>UNIT 2123<br>BRADENTON, FL 34205 | | | STORE INVENTORY | ☑ No<br>☐ Yes |
| 20.2 HIDEAWAY STORAGE<br>2900 US-301 S<br>ELLENTON, FL 34222 | | | STORE INVENTORY | ☑ No<br>☐ Yes |
| 20.3 OUTLETS AT TRAVERSE<br>3700 CABELA'S BLVD<br>LEHI, UT 84043 | | | STORE INVENTORY | ☑ No<br>☐ Yes |
| 20.4 PODS<br>4015 S. INTERSTATE 35<br>SAN MARCOS, TX 78666 | | | STORE INVENTORY | ☑ No<br>☐ Yes |
| 20.5 PUBLIC STORAGE<br>2100 UD HIGHWAY 301N<br>PALMETTO, FL 34221 | | | STORE INVENTORY | ☑ No<br>☐ Yes |

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

21. **Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None.

| Owner's Name and Address | Location of the Property | Description of the Property | Value |
|---|---|---|---|

| **Part 12:** | Details About Environmental Information |
| --- | --- |

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ None.

| Case Title and Case Number | Court or Agency Name and Address | Nature of Proceeding | Status |
| --- | --- | --- | --- |

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable under or in violation of an environmental law?**

☑ None.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|

| Part 12: | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ None.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |
|---|---|

25. **Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None.

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number (Do not include SSN or ITIN) | Dates Business Existed |
|---|---|---|---|

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

26.  **Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None.

| Name and Address | Dates of Service |
|---|---|
| 26a.1  ANKUR PATEL<br>1740 MONROVIA AVE.<br>COSTA MESA, CA 92627 | 07/25/2022 - ONGOING |
| 26a.2  JENNIFER PULLEN<br>1740 MONROVIA AVE.<br>COSTA MESA, CA 92627 | 08/17/2024 - ONGOING |
| 26a.3  RYAN FESSLER<br>FLEXPOINT SOLUTIONS LLC<br>8502 E. CHAPMAN AVENUE<br>SUITE 130<br>ORANGE, CA 92869 | 01/09/2020 - 08/16/2024 |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

26. **Books, records, and financial statements**

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None.

| Name and Address | Dates of Service |
|---|---|
| 26b.1 ANKUR PATEL<br>1740 MONROVIA AVE.<br>COSTA MESA, CA 92627 | 07/25/2022 - ONGOING |
| 26b.2 BDO<br>600 ANTON BOULEVARD, SUITE 500<br>COSTA MESA, CA 92626 | 01/01/2022 - 12/24/2022 |
| 26b.3 DELOITTE<br>C/O KEVIN HARVES<br>695 TOWN CENTER DRIVE, SUITE 1000<br>COSTA MESA, CA 92626 | 01/01/2023 - 12/24/2023 |
| 26b.4 RYAN FESSLER<br>FLEXPOINT SOLUTIONS LLC<br>8502 E. CHAPMAN AVENUE<br>SUITE 130<br>ORANGE, CA 92869 | 01/09/2020 - 08/16/2024 |

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |
|---|---|

26. **Books, records, and financial statements**

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None.

| Name and Address | If any Books of Account and Records are Unavailable, Explain Why |
|---|---|
| 26c.1 AMY DIETRICH<br>1740 MONROVIA AVE.<br>COSTA MESA, CA 92627 | |
| 26c.2 ANKUR PATEL<br>1740 MONROVIA AVE.<br>COSTA MESA, CA 92627 | |
| 26c.3 CLIFTONLARSONALLEN LLP<br>C/O MATT SMILEY, ROBERT HALLMAN<br>2875 MICHELLE DRIVE, SUITE 300<br>IRVINE, CA 92606 | |
| 26c.4 JENNIFER PULLEN<br>1740 MONROVIA AVE<br>COSTA MESA, CA 92627 | |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

26.  **Books, records, and financial statements**

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None.

| Name and Address |
|---|

26d.1   SEE NOTE BELOW
    1

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |

**Footnotes - SOFA Part 13 - Question 26d**

1. In the normal course of the Debtor's business, financial statements are regularly provided to a variety of parties, including but not limited to suppliers, insurance carriers, licensors, lenders, and financial institutions that provide credit to various suppliers, upon and in adherence to agreements with each constituent party.

**Part 13:**   **Details About the Debtor's Business or Connections to Any Business**

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ None.

| Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|
| 27.1  SMITH, MICHAEL R (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/04/2024 | $96,321.50 | STANDARD COST |
| 27.2  YANG, BO (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/26/2024 | $102,510.51 | STANDARD COST |
| 27.3  BAKER, MARIAN (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/12/2024 | $115,517.50 | STANDARD COST |
| 27.4  COLES, DANIEL (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/24/2024 | $86,369.92 | STANDARD COST |
| 27.5  NORRIS, MS. SUZANNE NICOLE (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/24/2024 | $81,992.27 | STANDARD COST |
| 27.6  MITCHELL, TRAVIS CHARLES (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/12/2024 | $152,182.35 | STANDARD COST |
| 27.7  THORESON, MARVIN JAY (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 10/02/2024 | $177,013.55 | STANDARD COST |
| 27.8  WOOLFORD, MS. LESLIE (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/19/2024 | $172,011.28 | STANDARD COST |
| 27.9  RODRIGUEZ, ANTOINETTE (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 10/02/2024 | $204,676.10 | STANDARD COST |
| 27.10  DOCTOR, MS. DOMINIQUE J (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/16/2024 | $132,082.81 | STANDARD COST |
| 27.11  BISHOP, MELISSA (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/26/2024 | $112,644.23 | STANDARD COST |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

| | | | | |
|---|---|---|---|---|
| 27.12 FAIMAN, KENNETH L (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/09/2024 | $82,500.51 | STANDARD COST |
| 27.13 MOORE, BOBBY L (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/25/2024 | $124,337.34 | STANDARD COST |
| 27.14 CROWE, MS. MICHELLE R (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 10/03/2024 | $157,399.22 | STANDARD COST |
| 27.15 CROWE, MS. MICHELLE R (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 10/01/2024 | $119,425.12 | STANDARD COST |
| 27.16 MCDONOUGH, MR. BRIAN (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/04/2024 | $65,050.33 | STANDARD COST |
| 27.17 HAZLETT, ANDREA (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/11/2024 | $104,977.23 | STANDARD COST |
| 27.18 LUCERO, MR. RONALD R. (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/16/2024 | $116,150.47 | STANDARD COST |
| 27.19 GONZALES, SALINA (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/11/2024 | $105,892.37 | STANDARD COST |
| 27.20 BAKER, MARIAN (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/18/2024 | $68,538.03 | STANDARD COST |
| 27.21 SAVINO, RIA (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 10/02/2024 | $83,701.54 | STANDARD COST |
| 27.22 TORO, SOFIA (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/29/2024 | $129,056.24 | STANDARD COST |
| 27.23 FINUCAN, KELLY (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/10/2024 | $76,889.18 | STANDARD COST |
| 27.24 CAMPOS, JENNIFER (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/26/2024 | $133,733.36 | STANDARD COST |

**Part 13:**  Details About the Debtor's Business or Connections to Any Business

| | | | | |
|---|---|---|---|---|
| 27.25 | GONZALES, SALINA (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/09/2024 | $134,026.12  STANDARD COST |
| 27.26 | MORALES, CINDY (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/26/2024 | $161,785.50  STANDARD COST |
| 27.27 | MORGAN, DAYNE WILLIAM (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/05/2024 | $90,783.96  STANDARD COST |
| 27.28 | VALDIVIA, MR. LOUIS A (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/15/2024 | $118,602.88  STANDARD COST |
| 27.29 | GOODHUE, DUSTY (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/04/2024 | $123,134.11  STANDARD COST |
| 27.30 | HARRIS, TRAVIS (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/11/2024 | $155,688.78  STANDARD COST |
| 27.31 | CRUNK, STEVEN (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/17/2024 | $88,125.63  STANDARD COST |
| 27.32 | LUCERO, MR. RONALD R. (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/19/2024 | $128,191.11  STANDARD COST |
| 27.33 | PARKER, ALICIA M (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/25/2024 | $117,177.27  STANDARD COST |
| 27.34 | MONDRAGON, DANA NICOLE (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/26/2024 | $92,039.39  STANDARD COST |
| 27.35 | KAHAKUA III, MR. HERBERT (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/16/2024 | $151,511.56  STANDARD COST |
| 27.36 | RIVAS, TAMMY (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/09/2024 | $79,665.72  STANDARD COST |
| 27.37 | GRAY, BRITTANY DANIELLE (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/10/2024 | $66,160.98  STANDARD COST |

**Part 13:**     **Details About the Debtor's Business or Connections to Any Business**

| 27.38 | SMITH, MICHAEL R (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/13/2023 | $130,041.42 | STANDARD COST |
|---|---|---|---|---|---|
| 27.39 | YANG, BO (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/19/2023 | $110,661.61 | STANDARD COST |
| 27.40 | BAKER, MARIAN (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/10/2023 | $112,031.30 | STANDARD COST |
| 27.41 | COLES, DANIEL (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/14/2023 | $106,647.02 | STANDARD COST |
| 27.42 | NORRIS, MS. SUZANNE NICOLE (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/13/2023 | $102,157.34 | STANDARD COST |
| 27.43 | MITCHELL, TRAVIS CHARLES (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/17/2023 | $173,537.84 | STANDARD COST |
| 27.44 | THORESON, MARVIN JAY (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/12/2023 | $152,877.07 | STANDARD COST |
| 27.45 | WOOLFORD, MS. LESLIE (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 10/10/2023 | $179,344.31 | STANDARD COST |
| 27.46 | RODRIGUEZ, ANTOINETTE (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/21/2023 | $148,146.32 | STANDARD COST |
| 27.47 | DOCTOR, MS. DOMINIQUE J (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/17/2023 | $151,129.73 | STANDARD COST |
| 27.48 | BISHOP, MELISSA (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/20/2023 | $135,418.25 | STANDARD COST |
| 27.49 | FAIMAN, KENNETH L (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/11/2023 | $113,589.85 | STANDARD COST |
| 27.50 | MOORE, BOBBY L (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 10/03/2023 | $106,613.55 | STANDARD COST |

**Part 13:**  Details About the Debtor's Business or Connections to Any Business

| | | | | |
|---|---|---|---|---|
| 27.51 | CROWE, MS. MICHELLE R (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/14/2023 | $158,657.25 STANDARD COST |
| 27.52 | CROWE, MS. MICHELLE R (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/17/2023 | $138,394.37 STANDARD COST |
| 27.53 | MCDONOUGH, MR. BRIAN (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/11/2023 | $101,906.16 STANDARD COST |
| 27.54 | HAZLETT, ANDREA (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/10/2023 | $121,867.74 STANDARD COST |
| 27.55 | LUCERO, MR. RONALD R. (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/10/2023 | $122,107.21 STANDARD COST |
| 27.56 | GONZALES, SALINA (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/18/2023 | $146,062.26 STANDARD COST |
| 27.57 | BAKER, MARIAN (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/17/2023 | $74,853.34 STANDARD COST |
| 27.58 | SAVINO, RIA (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/13/2023 | $134,718.34 STANDARD COST |
| 27.59 | TORO, SOFIA (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/11/2023 | $124,884.89 STANDARD COST |
| 27.60 | FINUCAN, KELLY (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/11/2023 | $106,430.82 STANDARD COST |
| 27.61 | CAMPOS, JENNIFER (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/17/2023 | $122,800.84 STANDARD COST |
| 27.62 | GONZALES, SALINA (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/19/2023 | $169,192.90 STANDARD COST |
| 27.63 | MORALES, CINDY (WIS INTERNATIONAL) | PHILLIP SMITH<br>WIS INTERNATIONAL<br>P.O. BOX 77631<br>DETROIT, MI 48277 | 09/21/2023 | $105,118.01 STANDARD COST |

**Part 13:**     Details About the Debtor's Business or Connections to Any Business

| | | | | |
|---|---|---|---|---|
| 27.64 MORGAN, DAYNE WILLIAM (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/10/2023 | $119,472.78 | STANDARD COST |
| 27.65 VALDIVIA, MR. LOUIS A (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/10/2023 | $126,273.18 | STANDARD COST |
| 27.66 GOODHUE, DUSTY (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/18/2023 | $139,508.78 | STANDARD COST |
| 27.67 HARRIS, TRAVIS (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/12/2023 | $163,030.93 | STANDARD COST |
| 27.68 CRUNK, STEVEN (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/20/2023 | $103,186.69 | STANDARD COST |
| 27.69 LUCERO, MR. RONALD R. (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/14/2023 | $141,096.52 | STANDARD COST |
| 27.70 PARKER, ALICIA M (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/17/2023 | $133,928.41 | STANDARD COST |
| 27.71 KAHAKUA III, MR. HERBERT (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/19/2023 | $216,007.50 | STANDARD COST |
| 27.72 GRAY, BRITTANY DANIELLE (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/11/2023 | $100,094.70 | STANDARD COST |
| 27.73 BECERRA, SAMUEL (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/08/2024 | $79,817.32 | STANDARD COST |
| 27.74 BECERRA, SAMUEL (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/11/2023 | $79,817.32 | STANDARD COST |
| 27.75 SCHEUMEISTER, ERIN (WIS INTERNATIONAL) | PHILLIP SMITH WIS INTERNATIONAL P.O. BOX 77631 DETROIT, MI 48277 | 09/30/2024 | UNDETERMINED | STANDARD COST |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

☐ None.

| Name and Address | Position and Nature of any Interest | Percent of Interest, if any |
|---|---|---|
| 28.1 BRAD LOUIS HOLMAN<br>1740 MONROVIA AVE.<br>COSTA MESA, CA 92627 | CHIEF OPERATING OFFICER | |
| 28.2 CHASE S. EXON III<br>1740 MONROVIA AVE.<br>COSTA MESA, CA 92627 | SECRETARY, GENERAL COUNSEL | |
| 28.3 JENNIFER PULLEN<br>1740 MONROVIA AVE.<br>COSTA MESA, CA 92627 | CHIEF FINANCE OFFICER | |
| 28.4 TODD MICHAEL HYMEL<br>1740 MONROVIA AVE.<br>COSTA MESA, CA 92627 | CHIEF EXECUTIVE OFFICER | |

| **Part 13:** | Details About the Debtor's Business or Connections to Any Business |
| --- | --- |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ None.

| Name and Address | Position and Nature of Interest | Period During Which Position Was Held |
| --- | --- | --- |
| 29.1 RYAN FESSLER<br>FLEXPOINT SOLUTIONS LLC<br>8502 E. CHAPMAN AVENUE<br>SUITE 130<br>ORANGE, CA 92869 | CHIEF FINANCIAL OFFICER | 01/09/2020 - 08/16/2024 |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

30. **Payments, Distributions, or Withdrawals Credited or Given to Insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ None.

| Name and Address of Recipient and Relationship to Debtor | Amount | Amount Description | Dates | Reason for Providing the Value |
|---|---|---|---|---|

**Part 13:** **Details About the Debtor's Business or Connections to Any Business**

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ None.

| Name of Parent Corporation | Employer Identification Number of the Parent Corporation |
| --- | --- |
| 31.1 LIBERATED BRANDS LLC | 83-3562718 |
| 31.2 VOLCOM, LLC | 33-0466919 |

**Part 13:**    **Details About the Debtor's Business or Connections to Any Business**

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ None.

| **Name of Pension Fund** | **Employer Identification Number of the Parent Corporation** |
|---|---|

| **Part 14:** | **Signature and Declaration** |
| --- | --- |

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Executed on:** 3/11/2025

**Signature:** /s/ Todd Hymel

Todd Hymel, Founder and Chief Executive Officer, Liberated Brands LLC

**Name and Title**

Are additional pages to the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?

☑ No
☐ Yes